**Stanley SAAVEDRA, Plaintiff,**

v.

**CITY OF ALBUQUERQUE, Albuquerque Personnel Board, City of Albuquerque Employee Health Center, Arthur A. Blumenfeld, Linda Logan–Condon, and T. Zane Reeves, Defendants.**

**Civ. No. 93–1043 JB.**

United States District Court,
D. New Mexico.

July 27, 1994.

528

Paul Livingston, Albuquerque, NM, for plaintiff.

David A. Rammelkamp, Todd M. Stafford, Kelly, Rammelkamp, Muehlenweg, Lucero & Leon, Albuquerque, NM, for defendant(s).

## SUMMARY JUDGMENT

BURCIAGA, Chief Judge.

THIS MATTER came before the Court on Defendants T. Zane Reeves', Linda Logan–Condon's, and the Albuquerque Personnel Board's April 15, 1994, motion for summary judgment. The Court, having reviewed the pleadings, submissions of the parties and the relevant law, and being otherwise fully advised in the premises, finds Defendants' motion for summary judgment is well taken and is granted.

The City of Albuquerque ("City") terminated Plaintiff's employment with the Albuquerque Fire Department after he tested positive for marijuana use. The City provided Plaintiff with pre-termination notice and a hearing. Following termination, Plaintiff initiated the City's employment grievance process. On four separate occasions, on July 30, September 6, October 11, and October 15, 1991, Defendant Dr. T. Zane Reeves, as Personnel Hearing Officer ("PHO"), conducted hearings regarding the merits of the City's termination decision.

At these post-termination hearings, Plaintiff had a right to the benefit of counsel and the opportunity to present evidence, elicit testimony and cross-examine witnesses. Defendant Reeves issued extensive findings of fact and a recommendation affirming Plaintiff's termination, based on his opinion that the City had just cause for termination. The Albuquerque Personnel Board ("Board"), chaired by Defendant Linda Logan–Condon, later reviewed the Personnel Hearing Officer's findings and upheld them.

By ordinance, the Board's review is limited to the administrative record. Albuquerque, N.M., Merit System Ordinance § 2–9–25(D)(4). The Board may either accept, reverse, or modify the PHO's decision, or remand for a more detailed record. *Id.* Parties may appeal the decision of the Board to the state district court. Ord. § 2–9–25(D)(5). The district court assesses whether the Board's decision was arbitrary and capricious, unsupported by substantial evidence, unconstitutional or illegal, or in excess of authority or jurisdiction. *Id.*

Under the City's merit system ordinance, Personnel Hearing Officers must be licensed attorneys or experienced in labor arbitration. Ord. § 2–9–27(B). Personnel Hearing Officers serve under a contract with the City and are not considered City employees for any purpose. Ord. § 2–9–27(C). Such contracts are for a maximum term of two years, and any one person may not serve as a PHO for more than four years. *Id.* A PHO is also prohibited from partisan political activities. Ord. § 2–9–27(D). The PHO is insulated from outside pressure during hearings and deliberations. Ord. § 2–9–27(E).

Following the Board's decision to affirm the findings of PHO Reeves, Plaintiff filed the present suit. Plaintiff's complaint alleges a variety of procedural and substantive due process violations. With respect to the al-

leged procedural deficiencies, Plaintiff asserts, *inter alia*, that the City wrongly placed the burden of proof on Plaintiff, that Defendant Reeves' contract with the City had lapsed (and thus Reeves was acting as PHO while not under formal contract), that the Board reached its decision in a closed, and not open, meeting, that the Board's review was too limited in scope, and that the Board had no authority to compel the attendance of witnesses. Plaintiff sued not only the City and Reeves, Logan–Condon, and the Board, but also the Chief Administrative Officer and the health clinic responsible for Plaintiff's drug test results. Plaintiff named the individual defendants in both their official and personal capacities.

Defendants moved for summary judgment, contending that Personnel Hearing Officers and members of the Board adjudicating employee grievances are entitled to absolute immunity from personal liability for quasi-judicial acts. In the alternative, the Defendants argue that their actions were shielded by qualified immunity.

■■■ Summary judgment is appropriate only where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The Court must view the record in the light most favorable to the existence of triable issues. *Exnicious v. United States*, 563 F.2d 418, 423–24 (10th Cir.1977).

■■ Although this point was not raised by either party, a threshold inquiry is whether Defendant Reeves, as an independent contractor to the City, acted under color of law within the meaning of 42 U.S.C. § 1983 (1988). Prior to 1988, some courts had held that private parties acting under contract with a local unit of government did not act under color of state law, and therefore could not be subject to section 1983 liability. *See, e.g., Calvert v. Sharp*, 748 F.2d 861 (4th Cir.1984), *cert. denied*, 471 U.S. 1132, 105 S.Ct. 2667, 86 L.Ed.2d 283 (1985) (private orthopedic specialist hired under contract by correctional institution did not act under color of law). The Supreme Court renounced those decisions, and held that one acts under color of law for purposes of section 1983 "[w]hether [the official is] on the state payroll or is paid by contract...." *West v. Atkins*, 487 U.S. 42, 56, 108 S.Ct. 2250, 2259, 101 L.Ed.2d 40 (1988).

Proceeding to the matter of contention, the next issue is whether Defendant Reeves and members of the Board are entitled to absolute immunity from liability, or are instead only protected by qualified immunity. In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court held that federal hearing examiners and administrative judicial officers are entitled to absolute immunity. The Court noted the longstanding absolute immunity protection accorded to judges, citing *Bradley v. Fisher*, 13 Wall. 335, 20 L.Ed. 646 (1872), and explained the underlying rationale behind judicial immunity. *Butz*, 438 U.S. at 508–09, 98 S.Ct. at 3235–36. As adjudications invariably produce at least one losing party, a frequent threat of liability could arise which might undermine a judge's independence and impartiality. A damages suit would become a means of collaterally attacking the judge's ruling, subverting the appeals process and weakening the finality of decisions. In addition, parties are adequately protected by appellate review and other aspects of the adversary judicial process. *Id.*

The court of appeals in *Butz* recognized the similar functions administrative judges perform, but nevertheless refused to extend absolute immunity to them because, *inter alia*, they act within the executive branch. *Id.* at 511, 98 S.Ct. at 3237. The Supreme Court disagreed, and found the same rationale equally applicable to administrative judicial officers. "Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities." *Id.* Administrative adjudication "shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for

damages." *Id.* at 513, 98 S.Ct. at 3238. The Court examined characteristics of the agency adjudication process which are similar to the operations of courts of law:

> The proceedings are adversary in nature. They are conducted before a trier of fact insulated from political influence. A party is entitled to present his case by oral or documentary evidence, and the transcript of testimony and exhibits together with the pleadings constitute the exclusive record for decision. The parties are entitled to know the findings and conclusions on all of the issues of fact, law, or discretion presented on the record.
>
> There can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is "functionally comparable" to that of a judge.

*Id.* (citations omitted). The Court also emphasized those features of the process adequately protective of litigants, noting that "the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." *Id.* Moreover, judicial review of the agency's decision obviates the need for lawsuits to correct constitutional error. *Id.* at 514, 98 S.Ct. at 3239.

The Supreme Court revisited the absolute immunity issue in *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), and elaborated on those principles governing whether an officer's actions should be cloaked with absolute immunity. A court presented with an absolute immunity defense must evaluate the need to assure an officer's independent action unfettered by fear of reprisal. *Id.* at 202, 106 S.Ct. at 501. Additionally, procedural safeguards, such as political insulation and correctability of error on appeal, must sufficiently reduce the necessity for private damages actions as a means of redressing constitutional violations. *Id.* The analysis is one of "functional comparability." Immunity does not flow from the officer's rank, title, or location within the government, but from the nature of the officer's responsibilities. *Id.* at 201, 106 S.Ct. at 500.

In *Cleavinger,* the Supreme Court declined to extend absolute immunity to prison officials hearing grievances relating to prison disciplinary measures. The Court believed the officials in question lacked the necessary independence and insulation from institutional pressure. *Id.* at 203, 106 S.Ct. at 501. They were not "professional hearing officers," but were instead "employees of the Bureau of Prisons and ... the direct subordinates of the warden who reviews their decision." *Id.* at 203–04, 106 S.Ct. at 502. Also influencing the Court's decision was the absence of procedural safeguards. *Id.* at 206, 106 S.Ct. at 503.

■ Absolute immunity applies, therefore, where (1) the defendant's duties and the procedures employed are functionally comparable to those of a judge in a court of law; (2) maintenance of the impartiality and effectiveness of the adjudicatory process in question requires eliminating any threat of personal liability; (3) the defendant's actions are more likely than other governmental action to result in disappointed parties' institution of lawsuits; and (4) procedural safeguards exist and are adequate to correct or prevent erroneous or intentional constitutional violations. *See Horwitz v. Bd. of Med. Examiners,* 822 F.2d 1508, 1513 (10th Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987). Application of these principles to the case at bar compels the conclusion that the Defendants' acts are shielded by absolute immunity.

The hearing before the PHO is adversary in nature. Employees have a right to counsel and the opportunity to present evidence, provide testimony, and cross-examine witnesses. The PHO is a professional hearing officer, is not considered an employee of the City, and is sufficiently independent. His decisions are insulated from political pressure. The PHO makes written findings of fact and issues a recommendation. The Board's review of the PHO's determination is limited to the record. The Board either affirms, denies, modifies, or remands the PHO's decision, similar to a reviewing court of law. The nature of the process is such that the terminated employee will often have a strong incentive to sue the PHO or the Board should either issue an adverse decision, and therefore a strong likelihood of

lawsuits could deter others from desiring to perform these functions and might introduce a hidden bias in favor of the aggrieved employee. In any event, constitutional violations can be corrected on appeal to the state district court. Notwithstanding Plaintiff's contrary assertions, all of the factors deemed dispositive in *Butz* are present here. The PHO and the Board must be free to exercise their discretion uninhibited by a looming threat of personal liability.

Analogous caselaw amply supports this conclusion. *See Atiya v. Salt Lake County,* 988 F.2d 1013, 1016–17 (10th Cir.1993) (county Career Services Council members, hearing employee grievances relating to employment decisions, are entitled to absolute immunity); *Farrish v. Miss. Parole Bd.,* 836 F.2d 969, 973–74 (5th Cir.1988) (state officials deciding whether to grant or deny parole accorded absolute immunity); *Horwitz v. Bd. of Med. Examiners,* 822 F.2d 1508, 1513–17 (10th Cir.) (medical board's decision to affirm a hearing officer's recommendation to suspend plaintiff's medical license shielded by absolute immunity), *cert. denied,* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987); *Lentsch v. Marshall,* 741 F.2d 301, 304 (10th Cir.1984) (witness testifying in civil service commission hearing entitled to absolute immunity for damages allegedly caused by defamatory testimony); *Ambus v. Utah Bd. of Educ.,* 858 P.2d 1372, 1377 (Utah 1993) (absolute immunity shields disciplinary actions taken by school board and disciplinary commission).

■ Plaintiff responds by arguing that because Defendant Reeves was a private independent contractor to the City, he is therefore not entitled to absolute immunity. Plaintiff cites *Wyatt v. Cole,* —— U.S. ——, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992), where the Supreme Court held that qualified immunity is not available to private defendants charged with section 1983 liability for invoking unconstitutional state replevin, garnishment, or attachment statutes. In *Wyatt,* the Court found that the policies supporting immunity—minimizing the inhibition of dis-

cretionary action and preventing any deterrence of those desiring to enter public service—are inapposite in the case of a private party acting pursuant to his or her own ends. *Id.* at ——–——, 112 S.Ct. at 1832–33.

*Wyatt* is readily distinguishable. This is not a case of a private individual invoking a state statute for purposes of economic gain. Instead, Defendant Reeves performed a public function the City is obligated to perform—namely, providing procedural due process to terminated or suspended employees. The functions of Defendant Reeves are those which governmental employees would have to carry out had the City not contracted for their performance. Unlike the situation in *Wyatt,* the reasons for extending immunity apply in this case. Denying immunity to Defendant Reeves could very well constitute a disincentive for others to become Personnel Hearing Officers in the future and might inhibit discretionary decisionmaking.

In *DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714 (10th Cir.1988), the Tenth Circuit held that "when private party defendants act in accordance with duties imposed by a contract with a governmental body, perform a governmental function, and are sued solely on the basis of those acts performed pursuant to contract, [immunity] is proper." *Id.* at 722. Although *DeVargas* was decided before the *Wyatt* decision, it is clear that the rule enunciated in *DeVargas* maintains vitality. *See Sherman v. Four County Counseling Center,* 987 F.2d 397, 405–06 (7th Cir.1993) (ruling that private hospital acting pursuant to court order and performing governmental function entitled to qualified immunity, citing *DeVargas* by analogy and distinguishing *Wyatt.*).[1] Absolute immunity does not as such protect the officer, but the public office itself. *Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). It matters not whether the person occupying the public office is employed by independent contract, but whether the policy rationales behind absolute immunity apply.

---

1. The courts in *DeVargas* and *Sherman* were extending qualified, not absolute, immunity. With respect to the broader issue of whether parties who are not direct governmental employees are nevertheless entitled to some sort of immunity, however, the same reasoning applies.

 As a second line of defense, Plaintiff raises various alleged procedural deficiencies, some of which he contends are violative of due process. Admittedly, a component of the immunity analysis is an assessment of the procedural safeguards designed to correct constitutional error. Absolute immunity differs from qualified immunity in that the former defeats suit at the outset, *Horwitz*, 822 F.2d at 1512, excuses "failure to comply with elementary principles of procedural due process," *Stump v. Sparkman*, 435 U.S. 349, 359, 98 S.Ct. 1099, 1106, 55 L.Ed.2d 331 (1978), and even immunizes capricious decisions motivated by prejudice, bias, or greed. *Id.; Sparks v. Duval County Ranch Co.*, 604 F.2d 976, 978 (5th Cir.1979) (judge who conspired with private individuals to enjoin plaintiffs from producing oil held absolutely immune), *aff'd sub. nom. Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). Qualified immunity does not shield such intentionally unconstitutional conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (qualified immunity does not apply to conduct violative of clearly established constitutional rights of which a reasonable person would have known). To justify protecting quasi-judicial officers with absolute immunity, therefore, the procedural safeguards in place must be sufficient to correct or prevent violations of due process rights of which a reasonable person would have known, or decisions made in bad faith or motivated by malice. If the safeguards are adequate in this regard, personal damages suits under section 1983 are unnecessary to vindicate constitutional rights, and the policies of promoting the uninhibited exercise of quasi-judicial discretion and reinforcing finality apply with full force.

 However, analysis of the procedural safeguards in the context of deciding whether to extend absolute immunity to quasi-judicial officers need not, and should not, take the form of a rigorous evaluation of whether the procedures in question independently satisfy due process in each individual case. A quasi-judicial officer is entitled to absolute immunity for adjudicative acts "even if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 359, 98 S.Ct. at 1106

(upholding shield of absolute immunity for judge who acted *ex parte* in issuing sterility order for minor). If the protection of absolute immunity depended upon whether plaintiff was afforded due process, the inquiry would devolve into an unpredictable and fact-specific exploration of the procedures employed. Such a case-by-case determination would frustrate the purposes of absolute immunity, which is intended to "defeat[ ] suit at the outset," *Horwitz*, 822 F.2d at 1512, in order to provide maximum protection and finality to adjudicative decisionmaking. To the extent the procedures in question fail to satisfy due process, any deficiencies not corrected by appellate review may be remedied through injunctive relief, *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), or by relief pursued against the City. For the purpose of resolving the absolute immunity question, however, the procedural safeguards in this context need only tend to prevent or correct due process violations, intentional misconduct, or decisions made in bad faith or motivated by bias or prejudice.

 The best bulwarks against such unconstitutional conduct are a neutral and detached decisionmaker and adequate judicial review. An independent, impartial adjudicator will be less likely to be biased towards either party or to issue decisions motivated by malice. An appellate court can readily correct clearly erroneous factfinding, due process violations, or biased decisions—and can do so at least as competently as a court entertaining a section 1983 claim for damages. Assuming the other three factors governing the absolute immunity analysis are satisfied, and the conduct complained of is a "judicial act," *see Stump*, 435 U.S. at 359–62, 98 S.Ct. at 1106–08, the suggestion could be made, with some logical force, that the procedural safeguards in place need only consist of a neutral and detached decisionmaker and adequate judicial review. In this case, both of these safeguards are buttressed by additional protections, such as the adversary nature of the process, a right to counsel, and a right to cross-examine witnesses, as discussed *supra*. *See Butz*, 438 U.S. at 513–14, 98 S.Ct. at 2914–15.

In conclusion, the Court finds that Albuquerque Personnel Hearing Officers and the Albuquerque Personnel Board, acting in their adjudicative capacities and performing quasi-judicial acts, are entitled to absolute immunity. Again, if Plaintiff is correct in his contention that the City's procedures failed to satisfy requirements of due process, he may still pursue relief against the City. Absolute immunity merely precludes Defendants from being held personally liable for damages.

Wherefore,

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendants Reeves', Logan–Condon's, and Albuquerque Personnel Board's motion for summary judgment be, and hereby is, granted.