73 F.3d 1525
 11 IER Cases 588
 Stanley SAAVEDRA, Plaintiff-Appellant,
v.
ALBUQUERQUE, The CITY OF; Albuquerque Personnel Board; The
City of Albuquerque Employee Health Center; Arthur A.
Blumenfeld, Chief Administrative Officer; Linda
Logan-Condon, Former Chairperson of the Personnel Board; T.
Zane Reeves, Personnel Hearing Officer, Defendants-Appellees.
 No. 94-2220.
 United States Court of Appeals,
Tenth Circuit.
 Jan. 17, 1996.
 
 Paul S. Livingston, Albuquerque, New Mexico, for appellant.
 Randy M. Autio, Assistant City Attorney, Albuquerque, New Mexico, for appellee City of Albuquerque.
 Todd M. Stafford (David A. Rammelkamp with him on the brief) of Kelly, Rammelkamp, Muehlenweg & Lucero, Albuquerque, New Mexico, for appellees City of Albuquerque Personnel Board, Linda Logan-Condon and T. Zane Reeves.
 Before BRISCOE, COFFIN* and BARRETT, Circuit Judges.
 BARRETT, Senior Circuit Judge.
 
 
 1
 Stanley Saavedra (Saavedra), plaintiff-appellant, appeals from orders of the district court granting summary judgment in favor of defendants-appellees, T. Zane Reeves, the Personnel Hearing Officer (PHO), the Albuquerque Personnel Board (Board) and the City of Albuquerque, New Mexico (City), and dismissing his 42 U.S.C. Sec. 1983 civil rights complaint.
 
 Facts
 
 2
 Saavedra commenced working for the City as a fire-fighter and emergency medical technician on or about September 20, 1982. His employment with the City was governed, in part, by the City's Merit System Ordinance (MSO) adopted pursuant to N.M. Stat. Ann. Sec. 3-13-4 (1978), and a collective bargaining agreement between the City and the International Association of Firefighters Local 244 (Union). Under the collective bargaining agreement, "[a]ll actions involving discipline and terminations shall provide due process as described by the Merit System Ordinance and existing applicable law." (Appellee's Supplemental Appendix, Vol. I at 000063).
 
 
 3
 Section 2-9-25(D) of the City's MSO provided in part: management actions questioned by an employee which result in dismissal are designated as Class I grievances; PHO's have the authority to hear and render decisions in Class I grievances; a PHO's decision is reviewable by the Board; and, "[t]he decision of the Personnel Board shall be reviewable in District Court...." Sec. 2-9-25(D)(5). Under the City's MSO, "safety-sensitive" employees, such as Saavedra, could be dismissed for justifiable cause, including testing positive for drugs.
 
 
 4
 In March, 1991, Saavedra suffered some personal and emotional problems. He self-referred himself to the City's Employee Health Center for an evaluation. Saavedra gave a urine sample. A specific gravity test applied to the sample indicated that it was essentially the same as water. Saavedra, at the request of City, gave a second urine sample several days later which tested positive for the presence of metabolites of marijuana.
 
 
 5
 On March 27, 1991, Albuquerque Fire Department Chief Montoya notified Saavedra in writing that he had tested positive for drug use in violation of the City's regulations. On April 2, 1991, Chief Montoya conducted a pre-termination hearing. Saavedra attended the hearing and was represented by Roman Velarde, his Union president. Saavedra was terminated on April 8, 1991, solely because he had tested positive for the presence of metabolites of marijuana in his urine. Thereafter, Saavedra filed a grievance challenging his termination.
 
 
 6
 Saavedra was provided with a post-termination grievance hearing in accordance with the City's MSO. PHO Reeves presided. During the course of the hearing, which was conducted on four one-day sessions in July, September, and October, 1991, Saavedra was represented by counsel. Saavedra appeared in person and was allowed to present evidence and to confront and examine adverse witnesses. The City also presented evidence.
 
 
 7
 Following the hearing, PHO Reeves prepared detailed written findings of fact, conclusions, and recommendations to the Board in which he recommended that Saavedra's grievance be denied and his discharge be upheld on the basis of just cause. The Board upheld PHO Reeves' recommendations by a 5-0 vote. Although Sec. 2-9-25(D)(5) of the City's MSO provided that "[t]he decision of the Personnel Board shall be reviewable in District Court ... [w]here the decision is in violation of applicable constitutional provisions or is otherwise illegal," Saavedra did not appeal to a New Mexico district court. Rather, he filed this action pursuant to 42 U.S.C. Sec. 1983 in federal district court against PHO Reeves, the Board and the City seeking, inter alia, "declaratory and compensatory relief for violations of the Fourth and Fourteenth Amendments" and "relief for substantive and procedural due process violations arising from the pre-termination and post-termination administrative proceedings." (Appellant's Appendix, Vol. I at 000001).
 
 
 8
 PHO Reeves, Linda Logan-Condon, Chair of the Board, and the Board (hereinafter collectively referred to as "individual appellees") moved for summary judgment on Count IV, Negligent and Tortious Conduct, and Count VII, Punitive Damages. Individual appellees argued that the PHO and members of the Board who had adjudicated Saavedra's grievances were entitled to absolute immunity from personal liability for quasi-judicial acts. Individual appellees argued, alternatively, that their actions were shielded by qualified immunity.
 
 
 9
 The City moved for summary judgment on Count I, Violation of the Fourth Amendment, and Count II, Violations of Due Process Rights. The City argued that it had reasonable suspicion to believe that Saavedra was engaging in drug activity and that it was, accordingly, justified in compelling him to submit a urine sample.[1] The City also argued that Saavedra was provided with all the process he was due.
 
 
 10
 On July 27, 1994, the district court granted summary judgment in favor of the individual appellees on Counts IV and VII finding that since individual appellees were acting in their "adjudicative capacities and performing quasi-judicial acts, [they] are entitled to absolute immunity." Saavedra v. City of Albuquerque, 59 F.Supp. 526, 531 (D.N.M.1994). The district court noted that if Saavedra "is correct in his contention that the City's procedures failed to satisfy requirements of due process, he may still pursue relief against the City." Id.
 
 
 11
 On August 25, 1994, the district court entered a final judgment in which it granted the City summary judgment on Counts I and II. The court found, inter alia, that: the City had reasonable suspicion to test Saavedra for drug use after he had admitted smoking marijuana, exhibited erratic behavior, and threatened violent behavior toward his supervisors; Saavedra "cannot now be heard to complain that he wasn't given a chance to contest the outcome of the drug test when it was his own admission which confirmed its validity," (Appellant's Appendix, Vol. II at 000259); and the post-termination grievance process accorded Saavedra pursuant to the City's MSO provided Saavedra all the due process that he was entitled to under the Fifth and Fourteenth Amendments. The district court dismissed, sua sponte, the remaining counts.
 
 Issues
 
 12
 On appeal, Saavedra contends that the district court erred in: (1) granting absolute judicial immunity to the Board members; (2) granting the City summary judgment on Count I; and (3) granting the City summary judgment on Count II.
 
 
 13
 We review the district court's grant of summary judgment de novo, applying the same legal standards employed by the district court. Gehl Group v. Koby, 63 F.3d 1528, 1533 (10th Cir.1995). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Hagelin for President Committee of Kan. v. Graves, 25 F.3d 956, 959 (10th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995).
 
 Disposition
 I.
 
 14
 Saavedra contends that the district court erred when it granted absolute immunity to the individual appellees.
 
 
 15
 Saavedra argues that the grant of absolute immunity to the individual appellees was unnecessary, unwise and improper and "[b]ecause the Personnel Board Defendants lack any judicial or adjudicatory power or ability, the extension of absolute judicial immunity to them makes little sense and sets a very dangerous precedent." (Opening Brief of Plaintiff-Appellant at 7). Saavedra states that under Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978), absolute immunity is to be granted only in those "exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of public business," and since the individual appellees did not meet that burden, they have not justified an entitlement to absolute immunity.
 
 
 16
 Saavedra further argues that: PHO's are private individuals who contract with the City and whose services consist primarily of taking testimony, conducting hearings and relaying the testimony in the form of a report to the Board; PHO's lack independence and fail to exercise any degree of independent judgment; the Board performs no judicial function; the Board has limited authority to approve, overturn, modify or remand; the City does not consider the Board's decisions binding since the City can appeal any adverse decision to a state district court; the powers of the Board, far from being judicial, are administrative and advisory; the Board performs no judicial functions; and the grievance resolution process set forth in the City's MSO was not at all adversarial.
 
 
 17
 Individual appellees respond that: they are entitled to absolute judicial immunity because their functions are similar to those in the judicial process; they properly exercised their adjudicative power and authority; their right to absolute immunity is firmly rooted in both Supreme Court and Tenth Circuit jurisprudence as set forth in Butz and Horwitz v. State Bd. of Medical Examiners of Colo., 822 F.2d 1508 (10th Cir.), cert. denied, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987); and the district court followed Butz and Horwitz in concluding that they were entitled to absolute immunity. We agree.
 
 
 18
 In granting individual appellees' motion for summary judgment, the district court found/concluded:
 
 
 19
 Proceeding to the matter of contention, the next issue is whether Defendant Reeves and members of the Board are entitled to absolute immunity from liability.... In Butz v. Economou ... the Supreme Court held that federal hearing officers are examiners and administrative judicial officials are entitled to absolute immunity. The Court noted the longstanding absolute immunity protection accorded to judges.... and found the same rationale equally applicable to administrative judicial officers. 'Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities.' [Butz at 511, 98 S.Ct. at 2913].
 
 
 20
 * * * * * *
 
 
 21
 Absolute immunity applies, therefore, where (1) the defendant's duties and the procedures employed are functionally comparable to those of a court of law; (2) maintenance of the impartiality and effectiveness of the adjudicatory process in question requires eliminating any threat of personal liability; (3) the defendant's actions are more likely than other governmental actions to result in disappointed parties' institution of lawsuits; and (4) procedural safeguards exist and are ad equate to correct or prevent erroneous or intentional constitutional violations. See Horwitz v. Bd. of Med. Examiners, 822 F.2d 1508, 1513 (10th Cir.), cert. denied, 484 U.S. 964 [108 S.Ct. 453, 98 L.Ed.2d 394] (1987). Application of these principles to the case at bar compels the conclusion that the Defendants' acts are shielded by absolute immunity.
 
 
 22
 The hearing before the PHO is adversary in nature. Employees have the right to counsel and the opportunity to present evidence, provide testimony, and cross-examine witnesses. The PHO is a professional hearing officer, is not considered an employee of the City, and is sufficiently independent. His decisions are insulated from political pressure. The PHO makes written findings of fact and issues a recommendation. The Board's review of the PHO's determination is limited to the record. The Board either affirms, denies, modifies, or remands the PHO's decision, similar to a reviewing court of law. The nature of the process is such that the terminated employee will often have a strong incentive to sue the PHO or the Board should either issue an adverse decision, and therefore a strong likelihood of lawsuits could deter others from desiring to perform these functions and might produce a hidden bias in favor of the aggrieved employee. In any event, constitutional violations can be corrected on appeal to the state district court. Notwithstanding Plaintiff's contrary assertions, all of the factors deemed dispositive in Butz are present here. The PHO and the Board must be free to exercise their discretion uninhibited by a looming threat of personal liability.
 
 
 23
 859 F.Supp. at 529-31.
 
 
 24
 We hold that the district court properly applied Butz and Horwitz in granting individual appellees absolute judicial immunity.
 
 II.
 
 25
 Saavedra contends that the district court erred when it granted summary judgment in favor of the City on his Fourth Amendment claims set forth in Count I of his complaint, i.e., that the suspicionless drug test-urinalysis, undertaken by the City, was in violation of his right to be free of unreasonable searches and seizures.
 
 
 26
 At the time Saavedra self-referred himself to the City's Employee Health Center, he was asked to give a urine sample. The specific gravity test applied to his first urine sample established that the sample was essentially the same as water. Saavedra gave a second urine sample several days later which tested positive for the presence of metabolites of marijuana. He was subsequently terminated solely because his urine sample had tested positive for the presence of metabolites of marijuana.
 
 
 27
 Following Saavedra's post-termination hearing, PHO Reeves concluded that the City had just cause to discharge Saavedra based on several aggravating factors, including the fact that Saavedra had "warned his supervisors that he might become violent if provoked and only a few months earlier [he] had lost his temper while in uniform and had engaged in a public alteration with his girlfriend," and that "a reasonable person assessing the preponderance of the evidence would conclude that [Saavedra] substituted or diluted his first urine sample with tap water." (Appellee's Supplemental Appendix, Vol. I at 000056).
 
 
 28
 In Count I of his complaint, Saavedra alleged that a "suspicionless drug test will not be upheld unless it is reasonable under the circumstances and the legitimate governmental interests involved are sufficiently compelling to outweigh the employee's right to privacy." (Appellant's Appendix, Vol. I at 000005-6). He further alleged that since the City was "unable to enunciate any real, valid, or reasonable purpose for testing its employees in general and Stanley Saavedra in particular.... the drug test [was] in violation of his right to be free of unreasonable search and seizure as protected by the Fourth Amendment." Id. at 6.
 
 
 29
 In granting the City summary judgment on Saavedra's Fourth Amendment claims, the district court found, inter alia:
 
 
 30
 When Plaintiff provided his first urine sample, he filled the cup with water in lieu of urine. Plaintiff does not dispute this fact, by affidavit or otherwise in his response to Defendant's motions for summary judgment.... the City directed Plaintiff to provide another urine sample. He did so and the test revealed the previous use of marijuana. When asked about the positive test result, Plaintiff admitted smoking marijuana.
 
 
 31
 Plaintiff does not dispute these facts amounting to reasonable suspicion. Instead, Plaintiff contends that "reasonable suspicion testing should only ... have been based on observable phenomena, such as direct observation of drug use or possession and/or physical evidence of Plaintiff being under the influence...."
 
 
 32
 * * * * * *
 
 
 33
 Plaintiff's position might have merit in the case of public employees who are not performing safety-sensitive functions.... however ... Plaintiff does not dispute Defendant's characterization of Plaintiff as a safety-sensitive employee.
 
 
 34
 * * * * * *
 
 
 35
 The Court finds that the City had reasonable suspicion to test Plaintiff for drug use. Plaintiff admitted to smoking marijuana, and he exhibited erratic, and even threatened violent, behavior towards his supervisors.
 
 
 36
 (Appellant's Appendix, Vol. II at 000253).
 
 
 37
 Normally, a search is considered reasonable under the Fourth Amendment only if it is supported by a warrant issued on probable cause; therefore reasonable suspicion, standing alone, is insufficient. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989). Even where the warrant requirement is relaxed, the existence of probable cause is required to make a full-scale search constitutional. New Jersey v. T.L.O., 469 U.S. 325, 340, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985). To this general rule requiring a search warrant on probable cause, or exigent circumstances justifying a probable cause based warrantless search, the Supreme Court has recognized a "special needs" exception. Skinner, 489 U.S. at 619, 109 S.Ct. at 1414.
 
 
 38
 Under the exception recognized in Skinner, no warrant nor probable cause is required by the Fourth Amendment "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " Id. (quoting Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987)). We evaluate the constitutionality of a "special needs" search under the Fourth Amendment's more general requirement of reasonableness, National Treasury Employees Union v. Von Raab, 489 U.S. 656, 665-66, 109 S.Ct. 1384, 1390-91, 103 L.Ed.2d 685 (1989), by "balancing the need to search against the invasion which the search entails." Romo v. Champion, 46 F.3d 1013, 1017 (10th Cir.) (quoting Camara v. Municipal Court of San Francisco, 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967)), cert. denied, --- U.S. ----, 116 S.Ct. 387, 133 L.Ed.2d 309 (1995). Whether a particular search is "reasonable depends on the context within which [the] search takes place." T.L.O., 469 U.S. at 337, 105 S.Ct. at 740. Thus, the appropriate inquiry in each case is "whether the government's need outweighs the individual's privacy interest." Romo, 46 F.3d at 1017 (quoting Dunn v. White, 880 F.2d 1188, 1193 (10th Cir.1989), cert. denied, 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990)). We assess whether the asserted government interest "justifies the privacy intrusions at issue absent a warrant or individualized suspicion." Skinner, 489 U.S. at 621, 109 S.Ct. at 1415.
 
 
 39
 In Skinner, the Court, after concluding that urinalysis testing of railroad employees for alcohol and drugs constituted the search of a person subject to the Fourth Amendment, held that the regulations authorizing the tests were reasonable even though there was no requirement of a warrant or reasonable suspicion that an employee might be impaired, because the compelling governmental interest outweighed the employee's privacy concerns. 489 U.S. at 633. The Court noted that it was undisputed that the covered employees were engaged in safety-sensitive tasks and that the restrictions necessary to procure the urine sample were quite minimal when compared to significant restrictions in freedom of movement the employees consented to as part of their jobs. Id. at 620, 624, 109 S.Ct. at 1414-15, 1417. See also Lucero v. Gunter, 17 F.3d 1347 (10th Cir.1994) (Holding that a random urine collection and testing of prisoners is a reasonable means of combating the unauthorized use of narcotics and does not violate the Fourth Amendment).
 
 
 40
 In Von Raab, the Court reached a similar conclusion. There the Court upheld suspicionless drug testing of certain United States Customs Agents where there was no triggering event. 489 U.S. 656. The Court approved drug testing of Customs Service employees having a direct involvement in drug interdiction or those required to carry a firearm. Id. at 677, The Court weighed the government's interest on the one hand, against the Customs Service employees' expectations of privacy on the other, and struck the balance in favor of the government. Id.
 
 
 41
 There can be little doubt that the search conducted by the City in this case was executed pursuant to special needs independent of traditional criminal law enforcement. However, the district court did not rely upon or address the "special needs" standard; instead, the court relied upon the City's own reasonable suspicion drug testing policy and found that the City had reasonable suspicion to test Saavedra for drug use.
 
 
 42
 Accordingly, we hold that the district court did not err in finding that the City had reasonable suspicion to test Saavedra for drug use, nor did the district court err in granting summary judgment in favor of the City on Saavedra's Fourth Amendment claims. We reject Saavedra's contentions that the City's claim of reasonable suspicion was not based on objective, specific observations or findings when, as here, it is uncontested that Saavedra was employed in a safety-sensitive position, Saavedra self-referred himself to the City's Employee Health Center for an evaluation, Saavedra had warned his supervisors that he might become violent if provoked, and Saavedra had lost his temper while in uniform and had engaged in a public altercation with his girlfriend. Significantly, Saavedra acknowledges that "[o]f course the Fourth Amendment allows reasonable suspicion drug testing of safety-sensitive employees." (Opening Brief of Plaintiff-Appellant at 28).
 
 III.
 
 43
 Saavedra contends that the district court erred when it granted the City's motion for summary judgment on his Count II due process claims.
 
 
 44
 The City's substance abuse policy provided in part that if an "employee fails the substance abuse test, he/she may appeal the results to City's Medical Review Officer whose determination regarding the results shall be final. A positive drug test ... shall result in the termination of the employee."
 
 
 45
 On appeal, Saavedra argues that "[b]ecause there was nothing [he] could do or say that would mitigate or alter the City's use of the positive test to terminate his employment, he was denied a meaningful hearing" and that the "opportunity to offer explanations for the positive test presented by the pre-termination and post-termination hearings was nothing more than an exercise in futility." (Opening Brief of Plaintiff-Appellant at 41). He also contends that: the City's hearing policy, whereby the grievant goes first as the moving party, violates common notions of adequate due process; the use of a non-rebuttable presumption (there was just cause for termination based on the positive test for metabolites of marijuana) placed an unconstitutional burden on him.
 
 
 46
 The City responds that: Saavedra's contentions fail factually; although Saavedra could have challenged the validity of the drug test at his pre-termination hearing or during the course of his four-day post-termination hearing, he opted not to do so; Saavedra's assertion that he was not allowed to challenge his termination is simply untrue and belied by the procedure provided him; and when PHO Reeves inquired into Saavedra's drug use, Saavedra admitted that he smoked marijuana just a few days prior to the test.
 
 
 47
 The essential elements of due process are notice and an opportunity to respond, Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985):
 
 
 48
 The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.... The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.... To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.
 
 
 49
 We hold that the district court properly applied Loudermill in granting the City's motion for summary judgment on Saavedra's due process claims. The City provided Saavedra with pre-termination notice and hearing where he was represented by the president of his Union. Thereafter, Saavedra participated in the City's post-termination grievance process which included hearings, the benefit of counsel, the opportunity to present evidence, and the opportunity to cross-examine witnesses.
 
 
 50
 Saavedra was terminated solely because he tested positive for marijuana use. Even though Saavedra had the opportunity to challenge the validity of the drug test during both his pre-termination and post-termination hearings, he opted not to do so. In this regard, the district court found that "the reason Plaintiff in all likelihood did not take such measures to challenge the positive test result is because he openly admitted to smoking marijuana. Plaintiff cannot now be heard to complain that he wasn't given a chance to contest the outcome of the drug test when it was his own admission which confirmed its validity." (Appellant's Appendix, Vol. II at 000259).
 
 IV.
 
 51
 The City argues that Saavedra's constitutional claims are barred by the doctrines of res judicata and collateral estoppel. Saavedra responds that res judicata and collateral estoppel principles do not preclude his constitutional claims because "[t]he District Court ruled only on the City's Motions for Summary Judgment on Counts I and II, and expressly found that the City's Motion for Summary Judgment on Collateral Estoppel ... [and] Res Judicata ... were moot." (Reply Brief of Plaintiff-Appellant at 14 n. 3). Although the district court did not reach this issue, it was raised by the City and "we are free to affirm a district court on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." United States v. Sandoval, 29 F.3d 537, 542 n. 6 (10th Cir.1994) (citation omitted).
 
 
 52
 As set forth, supra, Sec. 2-9-25(D)(5) of the City's MSO provided that "[t]he decision of the Personnel Board shall be reviewable in District Court ... [w]here the decision is in violation of applicable constitutional provisions or is otherwise illegal." Notwithstanding this section, Saavedra did not appeal his termination to a state district court. Rather, he brought this action in federal district court seeking declaratory and compensatory relief for alleged violations of his Fourth and Fourteenth Amendment rights and substantive due process.
 
 
 53
 The City argues that under University of Tenn. v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (Elliott ), Saavedra's failure to appeal his discharge in state district court bars consideration of his constitutional claims in federal district court. In Elliott, when the University of Tennessee (University) informed Elliott, a black employee, that he would be discharged for inadequate work performance and misconduct on the job, Elliott requested an administrative hearing. Prior to the commencement of the hearing, however, Elliott filed a Title VII action in federal district court. The federal district court allowed the administrative proceedings to go forward.
 
 
 54
 The administrative proceedings resulted in an administrative law judge (ALJ) ruling, affirmed by a University Vice-President on appeal, that Elliott's proposed discharge was not racially motivated. Elliott did not seek state court review of the administrative proceedings. Rather, he returned to federal district court.
 
 
 55
 In federal district court, the University moved for summary judgment asserting that principles of res judicata prevented relitigation of claims of racial discrimination in federal court. The district court granted the University's motion and entered judgment in its favor. On appeal, the Sixth Circuit reversed, holding that the full faith and credit statute, 28 U.S.C. Sec. 1738[2] "does not require federal courts to defer to the unreviewed findings of state administrative agencies." Elliott v. University of Tenn., 766 F.2d 982, 990 (6th Cir.1985), aff'd in part and rev'd in part, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986).
 
 On appeal, the Court held:
 
 56
 A state Administrative Law Judge determined that petitioner University of Tennessee ... was not motivated by racial prejudice in seeking to discharge respondent. The question presented is whether this finding is entitled to preclusive effect in federal court where respondent has raised racial discrimination claims under various civil rights laws, including ... 42 U.S.C. Sec. 1983.
 
 
 57
 * * * * * *
 
 
 58
 [W]e hold that when a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate," ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts. (Emphasis added).
 
 
 59
 Elliott, 478 U.S. at 790, 799, 106 S.Ct. at 3221-22, 3226.
 
 
 60
 "To summarize the holding in Elliott, a federal district court in a proceeding under 42 U.S.C. Sec. 1983 must give a state agency's factfinding the same preclusive effect to which it would be entitled in the state's court if the state agency" while acting in a judicial capacity resolved disputed issues of fact properly before it and the parties had an adequate opportunity to litigate the issues in dispute. Atiya v. Salt Lake County, 988 F.2d 1013, 1019 (10th Cir.1993) (emphasis original).
 
 
 61
 Similarly, courts "have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991). The principle that "a losing litigant deserves no rematch after a defeat fairly suffered in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.... holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal ... which acts in a judicial capacity." Id. at 107-08, 111 S.Ct. at 2169.
 
 
 62
 Under Solimino, the constitutional claims raised in Saavedra's federal district court action are barred under the common-law doctrines of collateral estoppel on those "issue[s] identical in substance to" those considered during the City's post-termination proceedings. However, inasmuch as our appellate record does not include an adequate record of the administrative proceedings, we cannot determine what constitutional claims may have been asserted by Saavedra, if any. See King v. Unocal Corp., 58 F.3d 586, 587-88 (10th Cir.1995) (failure to include trial transcript necessary to review challenge to jury instructions); United States v. Janus Indus., 48 F.3d 1548, 1559 (10th Cir.), cert. denied, --- U.S. ----, 116 S.Ct. 87, 133 L.Ed.2d 44 (1995) (failure to include, and reference to, portion of record wherein objections, properly preserving issues for appeal, may be found).
 
 
 63
 AFFIRMED.
 
 
 
 *
 The Honorable Frank M. Coffin, Senior Judge, United States Circuit Court of Appeals for the First Circuit, sitting by designation
 
 
 [1]
 Apparently, the City requested Saavedra submit a urine sample for a drug test pursuant to its reasonable suspicion drug testing policy. (Appellee City's Answer Brief at 5)
 
 
 [2]
 28 U.S.C. Sec. 1738 provides in part: Such acts, records and judicial proceedings or copies thereof, so authenticated shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken