466 P.2d 557

**INTERNATIONAL MINERALS AND CHEMICAL CORPORATION, Petitioner-Appellant,**

v.

**NEW MEXICO PUBLIC SERVICE COMMISSION, Respondent-Appellee,**

**Southwestern Public Service Company, Intervenor-Appellee.**

**No. 8857.**

Supreme Court of New Mexico.

March 9, 1970.

Rodey, Dickason, Sloan, Akin & Robb, John P. Eastham, Albuquerque, for petitioner-appellant.

James A. Maloney, Atty. Gen., John D. Donnell, James L. Parmelee, Jr., Special Asst. Attys. Gen., Santa Fe, for respondent-appellee.

Hinkle, Bondurant & Christy, Paul W. Eaton, Roswell, for intervenor-appellee.

## OPINION

WATSON, Justice.

International Minerals and Chemical Corporation purchases electricity for the operation of its potash mine near Carlsbad, New Mexico, from Southwestern Public Service Company, a public utility which is subject to regulation by the New Mexico Public Service Commission. Pursuant to § 68-8-1, N.M.S.A., 1953 Comp., International filed a complaint with the Commission, alleging that the rates charged it and other potash companies near Carlsbad by South-

western are unfair, unreasonable, and unjust in that such rates create an unreasonable difference as to rate of service between different classes of service.

Section 68–6–6, N.M.S.A., 1953 Comp., among other things provides:

"* * * No public utility shall establish and maintain any unreasonable differences as to rates of service either as between localities or as between classes of service."

After a hearing in which Southwestern participated, the Commission, by order, denied the complaint; and International sought review by the District Court of Eddy County. After a hearing on the record of the proceedings before the Commission, as provided by § 68–9–3, N.M.S.A., 1953 Comp. (1969 Supp.), the court found that the order of the Commission "is lawful and reasonable and is supported by substantial evidence." It then affirmed the Commission's action. International then appealed to this court.

Appellant's first point is that the Commission's order should be vacated because it does not comply with § 68–8–14, N.M.S.A., 1953 Comp., and thus the district court erred in affirming the Commission's order. Appellant calls our attention to our holding in Hardin v. State Tax Commission, 78 N.M. 477, 432 P.2d 833 (1967), where we said: "This court, in reviewing the district court's judgment, must, in the first instance, make the same review of the administrative agency's action as did the district court."

Section 68–8–14, supra, provides:

"After the conclusion of any hearing the commission shall make and file its findings and order. The findings of fact shall consist only of such *ultimate facts as are necessary to determine the controverted questions* presented by the proceeding. Such findings shall be separately stated and numbered, and each thereof shall state briefly and plainly an *ultimate fact necessary to determine a controverted question;* and there shall be such a finding of fact as to each of the controverted questions presented by the proceeding. The order of the commission shall be based upon said findings of fact * * *." (Emphasis Added.)

Here the Commission after finding it had jurisdiction and that notice had been given found:

"That Complainant falls within the classification of retail customer of Respondent while REA cooperatives and wholesale customers fall within the classification of wholesale customers of Respondent and that Respondents [sic] rates on file with and previously approved by this Commission allow a lower charge to its wholesale and REA cooperative customers than to its retail customers.

"That by some standards, Complainant is a more desirable customer than some wholesale and REA cooperative customers but not by all standards.

"That a substantial difference exists between transmission investments by REA cooperative customers and that of the Complainant.

"That many other factual differences exist between the respective services offered by Respondent to Complainant and to Respondent's wholesale and REA cooperative customers.

"That Complainant's financial position would be enhanced by the enjoyment of rates commensurate with wholesale and REA cooperative rates but that this fact is not solely determinative of the issues raised by this Complaint.

"That rates charged to different classes of service need not be equally profitable to the utility and the rate of return need not be the same.

"That Complainant has failed to sustain the burden of proving unlawful or unreasonable discrimination exists between the rates charged to its classification of service and to other classifications of service of the Respondent or as to rates charged to various members of its own classification."

The controverted question here presented was whether the admitted difference in electrical rates charged International and the potash companies as compared to wholesale and REA cooperative consumers is unreasonably different within the meaning of that portion of § 68–6–6, supra, quoted above. Appellant International asks how the trial court could properly say that the Commission's order was reasonable since it could not determine from the Commission's findings what standards it used in making its decision. Appellant states for its second point that if some of the Commission's findings are deemed relevant then we must assume that the Commission erroneously interpreted the law.

■ Certainly we cannot read the Commission's findings and ascertain its specific reasons for denying International's complaint, but § 68–8–14, supra, requires that the Commission find only the ultimate fact and does not require it to give reasons for its decision. The ultimate fact is the logical result of the proofs reached by reasoning from the evident facts. It is a conclusion of fact. Christmas v. Cowden, 44 N.M. 517, 105 P.2d 484 (1940); Continental Oil Co. v. Oil Conservation Comm'n, 70 N.M. 310, 373 P.2d 809 (1962). In Brundage v. K. L. House Construction Co., 74 N.M. 613, 396 P.2d 731 (1964), we approved ultimate findings of fact which were practically the applicable words of the workmen's compensation statute. The requirement of only a finding of the ultimate fact is not the most desirable method of assuring clear thinking by the administrative agency or effective judicial review of the agency's decision. 2 Cooper, State Administrative Law, 465–467 (1965). This may be so, but the Commission must be guided by the statute which created it.

■ Had the Commission found that no unreasonable discrimination existed between the rates charged to International's classification of service and to respondent's classifications of service, we believe under our prior holdings this would have been a finding of the ultimate fact in this case.

Except for the opening phrase, "That Complainant has failed to sustain the burden of proving unlawful or unreasonable discrimination * * *," and the closing phrase, "or as to rates charged to various members of its own classification," in its last finding above, this is what the Commission did find. We do not think that the addition of these two phrases, or the fact that the findings were unnumbered, would justify a reversal on the grounds that the requirements of § 68–8–14, supra, were not followed. S.I.C. Finance-Loans of Menaul, Inc. v. Upton, 75 N.M. 780, 411 P.2d 755 (1966). Compare Ross v. State Racing Comm'n, 64 N.M. 478, 330 P.2d 701 (1958).

■ Although the statute does not specifically place any burden of proof on International, the courts have uniformly imposed on administrative agencies the customary common-law rule that the moving party has the burden of proof. (See cases cited at page 355, 1 Cooper, State Administrative Law (1965), and the S.I.C. Finance-Loans case, supra.)

Appellant contends that in deciding discriminatory issues of this nature, courts and commissions have relied primarily upon a comparison of the cost to the utility in servicing the customers whose rates are being compared. If the record reveals that by this test the Commission's finding was not arbitrary and unlawful, should the court nevertheless reverse because some of its other findings might be irrelevant or lead to a conclusion that the Commission may have relied upon erroneous justifications for its order?

In Continental Oil Co. v. Oil Conservation Comm'n, supra, we said that administrative findings should be sufficiently extensive to show not only the jurisdiction but the basis of the Commission's order. There, however, we were only concerned with the Commission's failure to find basic facts upon which its jurisdiction depended, as required by the statute creating the Commission. (But see Llano, Inc. v. Southern Union Gas Co., 75 N.M. 7, 399 P.2d 646 (1964), where we determined

from the Commission's record that it had no jurisdiction.)

■ Where the statute itself requires only a finding of an ultimate fact, and that fact is found, we cannot interpret it to require any additional basis for the Commission's order. In such case even though improper factors are considered to justify the discrimination, if the record as a whole would justify it when only proper factors are considered, the Commission's ruling cannot be said to be arbitrary. St. Michaels Utilities Comm'n v. Federal Power Comm'n, 377 F.2d 912 (4th Cir. 1967). There should be no greater requirement for relevant and consistent findings by administrative bodies than by the courts if only the ultimate fact need be found. Erroneous findings of fact, unnecessary to support the decision of a court, are not grounds for reversal. Prude v. Lewis, 78 N.M. 256, 430 P.2d 753 (1967).

■ Our conclusions thus require our review of those portions of the record to which the parties' briefs direct us for the determination of the question of whether there was sufficient evidence before the Commission to support its finding of the ultimate fact. By so doing we answer appellant's point three which asks that the Commission's order be vacated because the finding that International had failed to prove unlawful or unreasonable discrimination is not supported by substantial evidence.

International contends that it pays 38% more than it would have to pay if it paid the wholesale rate applied to the others, and that on a cost of service basis this rate is not justified. In considering the cost of service, it says the following factors would be determinative: (1) Quantity of Use and Size of Demand; (2) Load Factor; (3) Delivery Voltage; (4) Quality of Service; (5) Density of Customers in the Area; and (6) Customer Location.

International's evidence shows the following for the year 1966:

(1) Quantity of Usage and Size of Demand:

|  | Total Usage In KWH | Total Annual Maximum Demand In KW |
|---|---|---|
| International | 106,703,966 | 15,121 |
| All Potash Companies | 321,231,000 | 44,799 |
| REA Cooperatives | 187,495,055 | 45,159 |
| New Mexico Electric Service (Wholesale Customer) | 308,105,000 | 48,924 |

(2) Load Factors                    (3) Delivery Voltage

| Internat'l. | Average Monthly | Average Annual | Average Monthly Maximum Demand | Annual Maximum Demand |
|---|---|---|---|---|
| No. 1 Shaft | 87.9% | 84.2% | 11,864 KW | 12,360 KW |
| No. 2 Shaft | 63.4% | 60.5% | 1,896.42 KW | 1,981 KW |
| La Huerta | 93.5% | 77.5% | 647.5 KW | 780 KW |

Load Factors:

| Total of Potash Companies | 81.7% |
| REA Customers | 47.5% |
| N.M.E.S. | 72.0% |

REA and N.M.E.S. Delivery Voltage: Of the 15 stations 14 have a higher annual maximum demand.

And as to (4) Quality of Service; (5) Density of Customers; and (6) Customer Locations, Mr. Matousek, witness for International, testified that he believed the quality of service for the customers being compared was similar except that he believed the industrial load would be removed first in case of an accident rather than the residential or vital loads such as hospitals. He also testified that power is carried further and services rendered in more locations to the wholesale customers than to the potash customers, and that potash customers would be served at a lower cost from this standpoint.

Appellant International relies on Mr. Matousek's opinion that the above figures show that it is superior to the utilities as a customer on the basis of cost of service, and that there should be no material difference in the rates charged except that the rate should be more favorable to International than to the others. Appellees admit that although the load factor would indicate that the potash companies are the better customer, none of the other factors so indicate; that as to quality of service the potash companies have more alternative transmission lines available for service, if and when necessary, than do most of the cooperatives, and that a special substation crew is provided only at the potash mine sites.

Appellees presented to the Commission the diagram plat of its overall transmission system in the area. This, with other evidence, reveals that the cooperative customers come to Southwestern's outlying substations with their own lines, while extensive off-system lines are required to service the potash field. Southwestern's overall transmission system extending from the Carlsbad area to the Roswell area can thus conveniently accommodate smaller users who tie into its numerous substations extending over this large area. Thus any difference because of density and location of customers is relatively minimized.

If we consider cost of service as the sole criteria for the rate differential we cannot conclude that the Commission's ruling was arbitrary. Appellant has not directed our attention to anything else in the record which, on the basis of other criteria such as public interest and economic benefits to the state, would require the reversal of the Commission's order.

The judgment of the trial court is affirmed.

It is so ordered.

MOISE, C. J., and COMPTON, J., concur.