1997-NMCA-034

939 P.2d 1066

**CITY OF ALBUQUERQUE,**
**Plaintiff–Appellant,**

v.

**Ernest B. CHAVEZ, Defendant–Appellee.**

**No. 16646.**

Court of Appeals of New Mexico.

March 13, 1997.

Certiorari Granted May 2, 1997.

Robert M. White, City Attorney, Charles W. Kolberg, Assistant City Attorney, City of Albuquerque, Albuquerque, for Plaintiff–Appellant.

Roy A. Anuskewicz, Jr., Albuquerque, for Defendant–Appellee.

## OPINION

APODACA, Judge.

1. The City of Albuquerque appeals the district court's order setting aside the City Personnel Board's (the Personnel Board) decision upholding the termination of Defendant Ernest B. Chavez (Employee). The district court held that the proceedings before the City's Hearing Officer violated constitutional due process, U.S. Const. amend. XIV; N.M. Const. art. II, § 18, because Employee bore the burden of persuasion and was required to present his evidence first. Under the particular facts of this appeal, we hold that due process was not violated by requiring Employee to present his evidence first or to bear the burden of production or persuasion in proceedings before the Hearing Officer. We therefore reverse the district court's order and remand for additional proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Employee was a sixteen-year veteran of the City of Albuquerque Fire Department (the Department) who had risen to the rank of lieutenant. Among his duties, he was in charge of procuring replacement parts, including tires, for Department vehicles. In early 1992, Employee solicited a $250 donation from Dan Shine, an employee of a company that did business with the Department, to help cover a shortfall in the budget for the Department's 1991 Christmas party. Not long after, Shine asked Employee for assistance in obtaining a discount on tires for Shine's personal vehicle. Employee arranged for Shine to pick up some tires from Fletcher's Cobre Tire, Inc., a supplier to the City. Shine obtained the tires but did not pay for them. After the tire company inquired about the purchase, Employee obtained the invoice and filled it out so that the City would be charged for the tires. When an investigation revealed that the City vehicle identified on the invoice did not have the new tires, Employee was charged with violating various Department and City rules.

3. In April 1992, Deputy Fire Chief Robert Otero presided over what the City called a "pre-[de]termination hearing." One week after the hearing, Fire Chief Thomas P. Montoya issued a memorandum to Employee notifying him that he was being terminated from the Department. The memorandum explained in detail the findings made against Employee and the grounds for the discharge. Employee's attorney, who had attended the pre-determination hearing (although not permitted to question witnesses or make a statement), wrote a letter in May 1992 appealing the decision to the mayor. The letter denied some of the factual allegations in the Fire Chief's memorandum to Employee, contended that Employee had no fraudulent intent, and pointed to severe emotional and physical problems that Employee had been suffering during the period of time the transactions took place.

4. The City's chief administrative officer upheld Employee's discharge and referred the matter to the Hearing Officer to schedule a hearing. There were only two issues before the Hearing Officer: (1) whether the employee's due process rights were violated during the pre-determination hearing and (2) whether the discipline imposed was too severe. After an evidentiary hearing, the Hearing Officer found that the Employee had *"failed his burden"* to demonstrate that *there were adequate mitigating circumstances to condone the act or lessen the discipline imposed* (emphasis added), and recommended upholding the termination. The Personnel Board, by a vote of two to one, accepted the recommendation.

5. In November 1992, Employee appealed the Personnel Board's ruling to the district court, raising a number of challenges to the administrative proceedings and contending that: (1) the Hearing Officer erred in concluding Employee had the burden of proof and in requiring Employee to present evidence first, (2) the pre-determination hearing violated Employee's due process rights, (3) the Hearing Officer erred when he excluded certain testimony, and (4) the Personnel Board's decision was arbitrary and capricious.

6. On August 27, 1993, the district court remanded the matter to the Personnel Board and held that the Hearing Officer had acted improperly in placing the burden of proof on

Employee and requiring him to present his evidence first. The district court did not rule on the other issues. The City appealed to this Court, but we dismissed the appeal because the remand to the Personnel Board was not a final order. After the second hearing in April 1994, a new hearing officer recommended that Employee not be terminated but rather suspended from duty for thirty days. The Personnel Board unanimously voted to modify the recommendation by increasing the period of suspension to ninety days. The City appealed this decision to the district court. In June 1995, the district court affirmed the Personnel Board's second determination. The City now appeals both the 1993 and 1995 district court orders. We reverse the district court's 1993 order remanding the matter to the Personnel Board for a second hearing. We remand to the district court to consider the other issues raised by Employee's original appeal from the Personnel Board's first decision.

## II. DISCUSSION

7. In discussing the burden of persuasion issue raised in this appeal, the parties pose the issue generally as follows: By placing the burden of persuasion on an employee, the City is essentially instructing the Personnel Board that it should not overturn a personnel decision unless it is persuaded that the decision was incorrect. To do what Employee would require—placing the burden of persuasion on the City—would be tantamount to instructing the Personnel Board that it should affirm the personnel action only if it is persuaded that the action was correct.

### A. Our Disposition On Narrower Issue

8. Because of the particular procedural facts in this appeal, however, we conclude that the real question raised by the parties is much narrower. We believe that, in deciding this appeal, our real focus should be on what factual aspect of this case did the hearing officer require Employee to bear the burden. That is, what fact or set of facts was Employee required to prove?

9. The circumstances under which parties in a proceeding, including defendants in criminal proceedings, can constitutionally be required to bear the burden of proof and production are numerous. *United States v. Battaglia*, 478 F.2d 854 (5th Cir.1972) (criminal defendant bears burden of persuasion and production of true facts to rebut presentencing information); *McGinnis v. Honeywell, Inc.*, 110 N.M. 1, 9, 791 P.2d 452, 460 (1990) (discharged employee bears burden to prove employer's culpable mental state for punitive damages); *Chavez v. Manville Prods. Corp.*, 108 N.M. 643, 647, 777 P.2d 371, 375 (1989) (discharged employee bears burden of proving his discharge violates public policy); *State v. Chavez*, 78 N.M. 446, 447, 432 P.2d 411, 412 (1967) (criminal defendant bears burden to establish claims of prejudicial publicity, threats against himself, and threats against the jury); *State v. Moser*, 78 N.M. 212, 214, 430 P.2d 106, 108 (1967) (criminal defendant bears burden when claiming ineffective assistance of counsel); *Acme Cigarette Servs., Inc. v. Gallegos*, 91 N.M. 577, 580, 577 P.2d 885, 888 (Ct.App.1978) (defendant bears burden when claiming an affirmative defense).

10. The common thread that runs through these cases is that parties in a proceeding properly bear the burden of both production and persuasion when they come forward with an affirmative reason to explain their behavior or special circumstances in support, extenuation, or mitigation. Placing the burden on parties claiming the affirmative is deemed proper because they are the only ones in possession of the facts and evidence supporting their claim. We believe this requirement equally applies to the burden imposed by the City on Employee in this appeal.

11. To ascertain the nature of that burden, we now turn to the facts of this appeal. In his report, the Hearing Officer characterized the two issues before him as whether Employee's due process rights were violated during the pre-determination hearing and whether the discipline imposed was too severe. Employee did not challenge that characterization of the issues.

12. We note that the due process issue presented to the Hearing Officer at the pre-determination hearing was whether Employ-

ee was permitted assistance of counsel, as opposed to the due process issue raised in this appeal on the burden of proof. The Hearing Officer determined, in connection with the issue of assistance of counsel, that Employee's attorney was permitted to direct Employee's presentation and this allowed Employee adequate opportunity to respond. That ruling was appealed to the district court but is not the subject of this appeal.

13. The remaining issue before the Hearing Officer was whether the discipline imposed was too severe. This view is supported by Employee's own briefs filed in the district court, which extensively discussed Employee's physical and psychological problems as factors in mitigation. This interpretation is also buttressed by the Hearing Officer's finding that Employee failed to meet his burden *to demonstrate that there were adequate mitigating circumstances to condone the act or lessen the discipline imposed* (emphasis added). Based on our own review of the record, we conclude that the issue before the Hearing Officer was whether the discipline was too severe.

■ 14. As we previously noted, it is not only permissible but necessary for Employee to bear the burden of presenting the facts he claims mitigate or explain his behavior. In this case, Employee desired to present evidence concerning his personal problems and need for counseling, to show that the discipline imposed was too severe. Employee directed the attention of the district court to the transcript of the first hearing to support his contention that he was required to present evidence first and bear the burden of persuasion. We have reviewed Employee's citation to the transcript, and we determine that the substantive evidence Employee was required to present first concerned certain testimony on Employee's personal problems and his need for counseling. On this narrow, factual issue, and under the particular procedural facts of this appeal, we conclude that Employee should bear the burden of producing that evidence and of persuading the hearing officer of its validity. *See generally Manville*, 108 N.M. at 647–48, 777 P.2d at 375–76. We will not search the record for any additional circumstances under which

Employee may have been required to present substantive evidence first. *In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.1992).

**B. Our Disposition On Broader Issue**

■ 15. Because of our disposition on the narrower issue, we ordinarily would not have to address the broader question of whether it would be permissible to have Employee carry the burden of production and persuasion if the issue were whether he had been dismissed for just cause. The dissent, however, suggests otherwise. We therefore consider it necessary to address that broader issue, and, doing so, we reverse on that issue as well.

16. Although a reversal of the allocation of the burden of persuasion would undoubtedly change the result in some cases, the difference in the burden is a subtle one. As the United States Supreme Court has written, when the burden of persuasion is a mere preponderance of the evidence, "[t]he litigants ... share the risk of error in roughly equal fashion." *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). To the extent that "rough" equality is not exact equality, so that the allocation of the burden of persuasion makes one party a little more equal than the other, the question is whether placing the burden of persuasion on the employee so offends accepted notions of fairness as to violate the constitutional mandate of due process. We believe it does not.

17. The United States Supreme Court has concluded that the allocation of the burden of persuasion in civil litigation is not dictated by the requirement of constitutional due process. In *Lavine v. Milne*, 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976), the Supreme Court, without dissent, held that the State of New York could require an applicant for welfare benefits to prove that the applicant had not left employment for the purpose of qualifying for benefits. Noting that the applicant bore the burden of proof on all elements of eligibility and that the essence of the applicants' complaint might be that it was unfair to place the burden of

proof on welfare applicants rather than the state, the Court wrote:

> Where the burden of proof lies on a given issue is, of course, rarely without consequence and frequently may be dispositive to the outcome of the litigation or application. It may be that establishing the absence of an illicit motive—as [the New York statute] requires appellees to do—is difficult, although as appellant argues, an applicant's motive should be best known by the applicant himself. However that may be, it is not for us to resolve the question of where the burden ought to lie on this issue. Outside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment.

*Id.* at 585, 96 S.Ct. at 1016.

18. When the Supreme Court has held that constitutional due process set limitations on the allocation of the burden of persuasion, it has been only when liberty was at stake. *See In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (in criminal prosecution government must establish guilt beyond a reasonable doubt); *Addington* (proof must be greater than the preponderance-of-evidence standard for commitment of person alleged to be mentally ill); *but cf. Medina v. California,* 505 U.S. 437, 449, 112 S.Ct. 2572, 2579, 120 L.Ed.2d 353 (1992) (state may presume that criminal defendant is competent and require him to shoulder the burden of proving his incompetence by preponderance of the evidence); *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (due process does not prohibit state from placing burden on defendant to prove by preponderance of the evidence an affirmative defense that would reduce second-degree murder to manslaughter).

19. The federal courts have even held that, in forfeiture procedures, which are often described as quasi-criminal but which do not deprive a person of liberty, due process does not prohibit placing on the private claimant the burden of proving that the property is not contraband. *See United States v. $250,000 in United States Currency,* 808 F.2d 895, 900 and n. 18 (1st Cir.1987) (citing

*Lavine* ); *United States v. Santoro,* 866 F.2d 1538, 1544 (4th Cir.1989).

20. We have discovered only one case that discusses *Lavine* in the employment context. *Sherris v. City of Portland,* 41 Or. App. 545, 599 P.2d 1188 (1979), stated that placing the burden of persuasion on a discharged employee "sounds inconsistent with a tenured employ[e]e's protected claim of entitlement to continued employment absent sufficient cause for discharge," but held that the placement of the burden was not "so crucial as to make it an element of due process." *Id.* 599 P.2d at 1193; *see Vanelli v. Reynolds Sch. Dist. No. 7,* 667 F.2d 773, 780 n. 12 (9th Cir.1982) (reaching same result and citing supporting cases, but without citation to *Lavine* ).

21. The dissent points to no controlling authority to support the proposition that the Fourteenth Amendment prohibits public employers from placing the burden of proof on terminated employees. To the contrary, the most recent Tenth Circuit cases in which an employee was required to present his evidence first, *Rutherford v. City of Albuquerque,* 77 F.3d 1258, 1264 (10th Cir.1996), *Saavedra v. City of Albuquerque,* 73 F.3d 1525, 1533 (10th Cir.1996), and *Benavidez v. City of Albuquerque,* 101 F.3d 620 (10th Cir. 1996) all reject contentions that the City of Albuquerque violated due process by imposing the burden of persuasion on an employee at a hearing before the Hearing Officer.

22. Employee cites authority for the general proposition that the Constitution guarantees procedural due process during administrative proceedings regarding the termination of tenured public employees—a proposition with which we agree—but he cites no case law or other authority endorsing the proposition that constitutional due process requires the City to bear the burden of persuasion at the proceeding before the Hearing Officer. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (pretermination process for public employee who can be discharged only for cause does not violate due process if employee is given notice and opportunity for some type of hearing; burden of proof not discussed by majority, concur-

rence, or dissent). Although Employee suggests that this Court decided otherwise in *In re Termination of Boespflug,* 114 N.M. 771, 845 P.2d 865 (Ct.App.1992), the majority opinion in that case did not address the issue. We acknowledge that *Boespflug* assumed that "the hearing officer erred by requiring petitioner to proceed first with his evidence," *id.* at 776, 845 P.2d at 870, but the opinion did not suggest that the assumption was based on considerations of constitutional law. Even the special concurrence in that case, which expressed the view that placing the burden of proof upon the petitioner "violated procedural due process," *id.* at 777, 845 P.2d at 871, relied on cases, primarily out-of-state authority, that did not rest on the constitutional requirements of due process. It is not unusual for courts to speak of "due process" without referring to constitutional norms. *E.g., Pulver v. Brennan,* 912 F.2d 894, 897 (7th Cir.1990) (speaking of "statutorily created due process rights"); *Hooks v. Hitt,* 539 So.2d 157, 160 (Ala.1988) (similar).

23. We have considered cases from other jurisdictions but find them unpersuasive. We found three jurisdictions that published opinions containing language that might lend support to Employee's argument. These cases, however, do not discuss or even cite *Lavine.* Additionally, in two of the cases it is not clear that the exact issue before us was decided. We discuss the cases from each of the three jurisdictions.

24. In California, language in one recent supreme court opinion could be read as stating that constitutional due process requires that the state bear the burden of persuasion at a hearing to determine whether an employee was properly terminated. *Coleman v. Department of Personnel Administration,* 52 Cal.3d 1102, 278 Cal.Rptr. 346, 350, 805 P.2d 300, 304 (1991), states:

> The [statute at issue] on its face does not provide for notice or an opportunity for the employee to be heard before the deemed resignation takes effect, nor does it provide for any hearing at which the state must prove the facts underlying the constructive resignation. Coleman contends that the lack of these procedural protections violates due process and is

therefore unconstitutional. As he notes, an employee dismissed for cause is constitutionally entitled to these protections. *(See Skelly v. State Personnel Bd.,* . . . 539 P.2d 774 [Cal.1975]; *Kirkpatrick v. Civil Service Commission* [77 Cal.App.3d 940, 144 Cal.Rptr. 51 (1978) ].)

The burden-of-persuasion issue, however, was not before the court in that case. Instead, the question was whether the employee was entitled to notice and an opportunity to be heard before termination. The court held that, under the facts of that case, the employee was not so entitled. Additionally, none of the opinions cited by *Coleman, Skelly,* and *Kirkpatrick* discuss the burden of persuasion; the issues in those cases were only notice and an opportunity to be heard. Indeed, *Skelly* would not have had occasion to address whether constitutional due process required the state to bear the burden of persuasion because the applicable statute already placed the burden on the state. *See Skelly,* 124 Cal.Rptr. at 21 n. 19, 539 P.2d at 781 n. 19. Thus, to the extent that the quoted passage in *Coleman* expresses a view that constitutional due process requires the state to bear the burden of persuasion, the passage appears to be merely offhand dictum, unsupported by any analysis or citation to authority.

25. Several decisions by Missouri's intermediate appellate court state that due process requires the government to bear the burden of persuasion at the first evidentiary hearing of an adversary nature regarding discharge of an employee. *See, e.g., State ex rel. Bernsen v. City of Florissant,* 588 S.W.2d 194, 196 (Mo.Ct.App.1979). None of these cases, however, cites *Lavine.* They also do not cite any United States Supreme Court cases on constitutional due process. The rationale of the leading case is simply that "[i]t is only fair since the superintendent [of Police] filed the charges that he be required to prove them before ordering plaintiff's discharge." *Heidebur v. Parker,* 505 S.W.2d 440, 444 (Mo.Ct.App.1974). Because none of these cases makes any mention of the federal or Missouri Constitutions, it is questionable whether the courts are relying on constitutional requirements. *See Tonkin v. Jackson*

*County Merit Sys. Comm'n,* 599 S.W.2d 25, 31–32 (Mo.Ct.App.1980) (noting that placing burden on government is consistent with Federal Administrative Procedures Act). The Missouri rule has apparently been applied only to the first adversary evidentiary hearing and might not be applied to a hearing such as the one at issue in this appeal.

26. Finally, we note that a recent opinion by the North Carolina Court of Appeals is contrary to our holding. *See Soles v. City of Raleigh Civil Serv. Comm'n,* 119 N.C.App. 88, 457 S.E.2d 746, *review granted,* 341 N.C. 652, 462 S.E.2d 517 (1995). In making its determination, the *Soles* court evaluated the three *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), factors used to indicate the specific dictates of due process: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government interest, including the function involved and the fiscal and administrative burdens that the additional or substitutive procedural requirement would entail. The *Soles* court determined that, under the first factor, employee's interest was significant, and that, under the third factor, the City's interest in maintaining good and efficient employees "must be acknowledged." 457 S.E.2d at 751–52. The crucial factor, then, was the second. The court's analysis of that factor was as follows:

Regarding the second factor ..., we agree with [employee] that requiring the dismissed employee to prove that the "action taken against him was unjustified" significantly increases the risk of an erroneous deprivation of the right to retain employment. *See Speiser v. Randall,* 357 U.S. 513, 525 [78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460] ("where the burden of proof lies may be decisive of the outcome"), *reh'g denied,* 358 U.S. 860 [79 S.Ct. 12, 3 L.Ed.2d 95] (1958).

In addition, the risk of error would indisputably be minimized if the appropriate "substitute procedural safeguard" was employed in circumstances such as these—

i.e., the City was required to carry the burden of proving its employee was terminated based upon cause. Indeed, as with the "significance of the private interest in retaining employment," *Loudermill,* 470 U.S. at 543 [105 S.Ct. at 1494], the "probable value" of such of substitute procedural safeguard "cannot be gainsaid." *Id.*

*Id.*

27. We do not consider the *Soles'* court's analysis of this second factor as compelling. The court's quotation from *Speiser* does not support its conclusion that placing the burden of proof on employees would "significantly" increase the risk of erroneous termination. In our view, the second prong favors employers because, as stated previously, there is not a high risk of error. *See Medina,* 505 U.S. at 449, 112 S.Ct. at 2579 (allocating preponderance of evidence burden of proof to criminal defendant creates no comparable risk because presumption only affects narrow classes of cases where evidence on either side is equally balanced). Also, as previously noted, *Soles* failed to recognize *Lavine,* and the North Carolina Supreme Court has granted review. We are not persuaded by any of this out-of-state authority that constitutional due process requires the City to bear the burden of persuasion at the proceeding before the Hearing Officer.

28. Even if we were to march through the balancing test in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), as the dissent does, we come to an opposite conclusion. The dissent concludes that the "procedural irregularities at the pretermination proceeding had the effect of increasing, and not decreasing, the risk of error present at the post-termination hearing," and cites *Benavidez v. City of Albuquerque,* 101 F.3d at 626, for the correlation between the process due at pre- and post-termination hearings. In *Benavidez,* the court, citing to *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), formulates what the essential elements of due process require—notice and an opportunity for a hearing appropriate to the nature of the case. *Benavidez,* 101 F.3d at 627. The hearing need not be elaborate, and something less than a full

evidentiary hearing is sufficient. *Id.* Employees are entitled to oral or written notice of the charges, an explanation of the evidence against them, and an opportunity to present their side of the story. *Id.* The hearing is not to resolve definitively the propriety of the charge, but only to determine whether there are reasonable grounds to believe the charges are true and the action is correct. *Id.*

29. It is not argued in this appeal that Employee was not notified of the hearing and the charges. He was allowed to respond orally or in writing, he employed counsel to advise him and his attorney was present at the hearing. He was allowed to present evidence. On the narrow issue of whether Employee should be required to present his evidence first, as the court held in *Benavidez,* we conclude that the pre-termination procedures met the essential principles of due process, tipping the balance under *Mathews,* in favor of a post-termination process where Employee was entitled only to "some opportunity" to present his side of the case. *Benavidez,* 101 F.3d at 627. Under the particular circumstances of this appeal, we follow the holdings in *Rutherford, Saavedra,* and *Benavidez* and determine that Employee received all the process he was due.

30. We hold that there is no violation of constitutional due process when a statute, ordinance, or rule provides that a public agency's decision to terminate or otherwise discipline an employee should be affirmed by a personnel board unless the employee persuades the board that the agency decision was incorrect.

31. We also hold that there is no violation of due process in the requirement that Employee be the first party to present evidence before the Hearing Officer. Because of the prior proceedings, Employee had already been thoroughly advised of the allegations against him and had stated his defenses. There would be little if any advantage to be gained by the City in requiring Employee to proceed first. Although the requirement that Employee proceed first could violate constitutional due process requirements if Employee had received inade-

quate notice of the allegations against him, that was not the case here.

## III. CONCLUSION

32. We reverse the district court's order setting aside the 1993 Personnel Board's decision to terminate Employee's employment. We note, however, that Employee's appeal to the district court raised other challenges to the Personnel Board's action and that the district court has not ruled on those challenges. We therefore remand to the district court for consideration of those challenges. If the district court should determine that they are not meritorious, the 1993 Personnel Board action terminating Employee should be affirmed by the district court. If, on the other hand, the district court determines that one or more of the challenges is meritorious and requires that the 1993 Personnel Board decision be set aside, then the district court's order remanding for a second hearing before the Board was correct, although initially made for the wrong reasons. In that event, the 1995 determination of the Board, which suspended Employee for ninety days, should be affirmed. We remand for proceedings consistent with this opinion.

33. **IT IS SO ORDERED.**

ALARID, J., concurs.

ARMIJO, J., dissents.

ARMIJO, Judge, dissenting.

34. The City of Albuquerque (City) had a rule, within its employee grievance procedure, which placed upon a terminated or otherwise disciplined employee the burden of coming forward and demonstrating that the discipline imposed was not based on a justifiable cause. The dispositive question in this case is whether Employee's right to due process was violated when his employer, the City, applied a rule which placed on Employee, a tenured lieutenant in the City's fire department (the Department), the burden of proving by a preponderance of the evidence that there was no justifiable cause to terminate his employment.

35. At stake here is a tenured public employee's *constitutionally protected property*

*right* in maintaining his employment. *See Lovato v. City of Albuquerque*, 106 N.M. 287, 289, 742 P.2d 499, 501 (1987). According to case law cited by the majority, a constitutionally protected liberty interest also may be at stake. *See Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777-78 (9th Cir.1982) (citing *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972)). I disagree with the majority's attempt to confine this case to the "narrower issue" of mitigating circumstances. On the broader issue of the constitutionality of the City's allocation of proof, I do not agree that this case is governed by a per se rule that the Due Process Clause never applies to the allocation of the burden of persuasion in employment termination proceedings, nor do I agree with the notion that the acceptance of such a rule by federal courts, under different facts, relieves this Court of its duty to independently analyze the protection afforded by our state constitution.

36. I would hold that to place the burden of persuasion on the employee under the circumstances of this case so offends accepted notions of fairness as to violate the constitutional mandate of due process under the New Mexico Constitution. "[B]ecause the process, as well as the result, is of high importance, sometimes it is the process, rather than the result, that justifies remand and reconsideration." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 119 N.M. 29, 40, 888 P.2d 475, 486 (Ct.App.1994). For this reason, I would affirm the district court's June 1993 order remanding the matter to the Personnel Board for a second post-termination hearing.

37. I first turn to a review of the facts of this appeal before discussing how the constitutional due process issue arose, how it was preserved for appeal, and why it merits consideration as this case's central issue.

*Standard of Review*

38. The majority has concluded that the "real" issue in this case is whether Employee should bear the burden of proving an affirmative defense or mitigating circumstances that would lessen the severity of the discipline imposed on him. To support this conclusion, the majority relies exclusively on the hearing officer's report of September 1992, and the principle that appellate courts "will not search the record to find evidence to support an appellant's claims." *In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct.App.1992) (applying this principle in a probate case to resolve a substantial evidence question). Because Employee is the appellee in the case at bar and his appeal presents a legal question of constitutional due process that arises from an administrative context where this Court applies a whole record standard of review, *see Gallegos v. New Mexico State Corrections Dep't*, 115 N.M. 797, 800, 858 P.2d 1276, 1279 (Ct.App. 1992), I do not believe such complete deference to the September 1992 hearing officer's report is warranted. Since this case presents mixed questions of fact and law, this Court should review the matter de novo, considering the whole record. *See Fitzhugh v. New Mexico Dep't of Labor*, 122 N.M. 173, 180, 922 P.2d 555, 562 (1996).

39. The majority's analysis of the "narrower issue" of mitigating circumstances presupposes that either the City *already* had met its burden of proving just cause for Employee's dismissal, *or* that Employee did not object to, or preserve for appeal, the issue of whether there was just cause for his dismissal. An examination of the record with respect to the administrative hearings held below reveals that neither of these presuppositions are supported. This Court's consideration of the issue of the denial of constitutional due process must necessarily be considered in the context of the entire administrative proceedings below. I do not share the majority's decision to single-out and examine only one aspect of these proceedings in making a determination of what process is due to Employee.

*The "Pre–Termination" Hearing—April 1992*

40. The April 1992 pre-termination hearing was Employee's first opportunity to dispute the charge that he arranged for Dan Shine to receive a set of tires for Shine's personal vehicle at the City's expense. At this hearing, Employee disputed both the

City's factual allegations and the reasonableness of the City's decision to terminate him. Employee did not have a full opportunity to rebut the charges against him at this hearing because the hearing officer denied his request to be represented by counsel, and there was no opportunity at this hearing for Employee to cross-examine adverse witnesses or to challenge evidence such as the invoice which documented the transaction in which the tires were billed to the City.

41. Indeed, the hearing officer who presided at this hearing and who wrote the recommendation that Employee be terminated was himself involved in the transactions on which Employee's termination was premised. This hearing officer was the same person who made repeated requests that Employee solicit donations to pay a debt that the hearing officer had incurred on his personal credit card as a result of the Department's 1991 Christmas party. This hearing officer was the same person who met with Shine to pick up the donation that Employee had solicited from Shine's employer to help pay this debt. Other than Employee, Shine was the only person interviewed in both the pre-termination investigation and the July 1992 post-termination hearing who had personal knowledge of whether Shine paid Employee for the tires and what the purpose of this transaction was. Hence, the credibility of Shine's testimony was essential to sustain the charges that Employee violated the Department's rules. Shine also was disciplined by his employer as a result of the transaction with the tire store.

42. Based on the "pre-termination hearing," the hearing officer's written recommendation, and unsworn statements taken by a Department employee with no training or prior experience in conducting investigations of his co-worker's misconduct, the Chief of the Department issued a memorandum to Employee terminating his employment on April 29, 1992. Employee initiated his challenge to the Fire Chief's decision to terminate his employment by writing a letter to the Mayor's Office on May 11, 1992 (the May 1992 letter), in which Employee "categorically denies each and every finding" in the Fire Chief's April 1992 memorandum. The City's

Chief Administrative Officer (CAO) upheld Employee's dismissal and forwarded Employee's May 1992 letter to a different hearing officer employed by the City's Personnel Board, who then conducted the post-termination hearing in July of 1992.

*The "Post–Termination Hearing"—July 1992*

43. According to the City's grievance resolution procedure, Employee's May 1992 letter is the document that presents the issues being challenged to the post-termination hearing officer. *See* Albuquerque, N.M., Rev. Ordinances, ch. 2, art. IX, § 2–9–25(D) (1992). The City's grievance resolution procedure also specifies that the hearing officer shall set the matter down for a "full hearing on the merits" unless the CAO determines that the matter is not a grievance, in which case the hearing is limited to the issue of grievability. *Id.* at §§ 2–9–25(D)(2) & (3). There is no question that Employee's complaint constituted a grievance, and hence the July 1992 post-termination hearing was a full hearing on the merits in which the hearing officer was notified and given the opportunity to rule on all of the issues raised in Employee's May 1992 letter to the CAO. Employee cited relevant portions of the transcript of the July 1992 hearing in his initial appeal to the district court. I therefore take exception to the majority's characterization of the July 1992 hearing as only involving two issues.

44. The evidence presented by Employee at the July 1992 post-termination hearing, including his own testimony, was relevant to his denial of the City's factual allegations as well as the issues of denial of due process at the pre-termination hearing and the reasonableness of the City's decision to terminate him. In particular, Employee denied that he had the requisite intent to violate the Department's rules. The evidence regarding Employee's psychological condition was introduced not only to establish mitigating circumstances but also to support Employee's theory that billing the tires to the City was a mistake rather than an intentional act and to explain why Employee had difficulty remembering what he did with the invoice that resulted in his termination.

45. Employee also denied that Shine ever paid him for the tires, and this denial contradicts Shine's testimony that Shine paid Employee $250 for the tires. Establishing that such payment occurred is essential to sustaining the charge that Employee accepted a reward from a contractor and attempted to realize personal gain from public employment. However, Shine was initially fired by his employer because of this transaction and then reinstated after he gave his statement to the Department's investigator and that investigator intervened on his behalf. For this reason, the hearing officer in the April 1994 rehearing on remand found that "Shine did not credibly testify concerning his allegations that he gave [Employee] money which were in part returned by [Employee]" and concluded that the charges involving the payment from Shine to Employee were "not sustained" because "Shine's statements are not credible especially in light of his own vested interest in getting his own job back which apparently he did." Because of his involvement in soliciting and receiving the donation from Shine's employer, the hearing officer at the April 1994 rehearing also "ha[d] a question as to whether [the pre-termination hearing officer] maintained an open mind throughout the pre-determination hearing." This factual dispute over whether Shine paid Employee for the tires underscores the extent to which the outcome of this case depends on the assessment of witnesses' credibility, the neutrality of the factfinder charged with making this assessment, and ultimately, who bears the burden of proof when the only evidence concerning such a key factual issue is the conflicting testimony of two witnesses.

46. The transcript of the July 1992 post-termination hearing demonstrates that Employee was instructed to proceed first with his opening statement, his presentation of evidence, and his closing statement. With the exception of one witness for the City who had to testify out of order because of a scheduling conflict, the City did not present any of its witnesses until Employee had rested his case. Employee carried the burden of proof on all issues raised at the post-termination hearing.

*Preservation of Error*

47. The constitutional issue regarding the burden of proof has been properly preserved. Our Supreme Court has recognized that the record in administrative cases can be characterized by procedural informality that would not be acceptable in a trial setting where strict procedural rules apply. *See Fitzhugh*, 122 N.M. at 184, 922 P.2d at 566. Nonetheless, an appellate court will examine the record so as not to allow the informality of the administrative process to defeat a litigant's right to perfect an appeal. Strict application of the procedural rules regarding preservation of error to a review of informal administrative proceedings is disfavored. *See Chicharello v. Employment Sec. Div.*, 122 N.M. 635, 930 P.2d 170, 172 n. 1 (1996); *Dick v. City of Portales*, 118 N.M. 541, 543, 883 P.2d 127, 129 (1994). In the present case, where the challenge is to the constitutionality of the very rules of procedure under which the administrative agency is operating, and a hearing officer employed by that agency had no authority to hold these rules unconstitutional, the purpose of the rule requiring preservation is not served by requiring the challenger to have raised the constitutional issue before the hearing officer. *See Montez v. J & B Radiator, Inc.*, 108 N.M. 752, 754, 779 P.2d 129, 131 (Ct.App.1989); *Sandia Sav. & Loan Ass'n v. Kleinheim*, 74 N.M. 95, 99–100, 391 P.2d 324, 328 (1964) (citing Kenneth C. Davis, *Administrative Law Treatise*, § 20.04 (1958)). "[A]lthough appeals through administrative channels are preferred and encouraged, procedural due process defenses should not be waived if timely raised in the first judicial tribunal to review the administrative action." *Ashby v. Civil Serv. Comm'n*, 241 Neb. 988, 492 N.W.2d 849, 853 (1992).

48. Employee timely raised this constitutional challenge at the first judicial tribunal to review the administrative action, arguing that *In re Termination of Boespflug*, 114 N.M. 771, 845 P.2d 865 (Ct.App.1992), provided a basis for interpreting the state provision regarding due process differently than the federal provision. *See State v. Gomez*, 122 N.M. 777, 784, 932 P.2d 1, 8 (1997). That tribunal ruled on the issue. There is no

question that the parties to this appeal recognized the controlling issue in the case as whether Employee's constitutional right to due process was violated by the manner in which the City allocated the burden of proving just cause for Employee's termination. The City, the Appellant in this case, did not limit its appeal to the narrower issue of the burden of proving mitigation or affirmative defenses. Rather, the City asserts in its briefs and docketing statement that "[Employee] disputed that his arranging for the Fire Department to pay for tires installed on a private vehicle could constitute justifiable cause for the Fire Department to dismiss him[,]" and therefore the City framed the issue before the Court as: "Whether the City's Personnel Hearing Officer may require a grievant to proceed first with his evidence, and therefore bear the burden of proof, in a hearing before the Personnel Board." The broader issue concerning the burden of proving just cause is properly preserved for appeal and its merits should be addressed.

*The Meaning of "Just Cause"*

49. Under the facts of this case, the majority's decision to segregate the "narrower" issue of mitigating circumstances or severity of discipline from the broader issue of whether there is just cause for an employee's dismissal does not accord with this Court's previous interpretations of the term "just cause." The majority's characterization of the allocation of the burden of proof is a significant departure from the traditional rule according to which a public employer must bear the burden of proving at an evidentiary hearing that there is just cause to terminate an employee. I believe the majority's analogies to the allocation of proof for affirmative defenses or mitigating circumstances in criminal cases or civil forfeiture proceedings are misplaced.

50. This Court's prior opinions on the issue of defining "just cause" provide a better analogy. In *State ex rel. New Mexico Highway Dep't v. Silva,* 98 N.M. 549, 551–52, 650 P.2d 833, 835–36 (Ct.App.1982), this Court rejected an interpretation of the State Personnel Act, NMSA 1978, §§ 10–9–1 to –25 (Repl.Pamp.1995), that defines "just cause" solely in terms of whether there is sufficient evidence to support a finding that the activity or inactivity of an employee constituted misconduct. In rejecting this interpretation, this Court stated that "just cause" is not measured simply by the employee's conduct, but rather by "*agency action* which is taken because of the employee's conduct." *Silva,* 98 N.M. at 552, 650 P.2d at 836 (emphasis in original). In *Gallegos,* 115 N.M. at 802, 858 P.2d at 1281, this Court interpreted *Silva* to mean that, in order to establish "just cause" for an employee's dismissal, "the Board is required to determine not only that there was employee misconduct but also that the agency's discipline was appropriate in light of that misconduct. The first prong focuses on the *employee's* action; the second prong ... focuses on the *agency's* action." (Emphasis in original.)

51. The grievance resolution procedures in the City's Merit System Ordinance at issue in the case at bar parallel the procedures for employee appeals in the State Personnel Act. *Compare* NMSA 1978, § 10–9–18 *with* Albuquerque, N.M., Rev. Ordinances, ch. 2, art. IX, §§ 2–9–24 & –25 (1992). Hence, I would interpret the ordinance and the statute in a similar manner and require the public employer to prove *both* prongs of the "just cause" test articulated in *Gallegos.*

*The Merits of Employee's Constitutional Due Process Claim*

52. A tenured public employee in New Mexico has a constitutionally protected property interest in continued employment. *See Lovato,* 106 N.M. at 289–90, 742 P.2d at 501–02; *Benavidez v. City of Albuquerque,* 101 F.3d 620, 626 (10th Cir.1996) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 543, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494 (1985)). Constitutionally protected liberty interests may be at stake as well. *See Vanelli,* 667 F.2d at 777–78 (citing *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707); *People v. Ramirez,* 25 Cal.3d 260, 158 Cal.Rptr. 316, 320, 599 P.2d 622, 627 (1979). The public employer "shares the employee's interest in avoiding disruption and erroneous decisions...." *Loudermill,* 470 U.S. at 544, 105

S.Ct. at 1494. The question in this case is what process is due before an individual can be deprived of his or her constitutionally protected interests in continued employment.

53. The authorities cited by the majority take inconsistent approaches to determining what process is due under the Fourteenth Amendment. *Compare Lavine v. Milne*, 424 U.S. 577, 585, 96 S.Ct. 1010, 1016, 47 L.Ed.2d 249 (1976) (suggesting per se rule that burden of proof is never an issue of federal constitutional moment in civil litigation) *with Benavidez*, 101 F.3d at 626 (applying balancing test derived from *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), to determine what process is due in each case) *and Medina v. California*, 505 U.S. 437, 446, 112 S.Ct. 2572, 2577, 120 L.Ed.2d 353 (1992) (relying on text and historical tradition to determine what process is due). Because the approaches taken by courts from other jurisdictions have been inconsistent, I believe an independent analysis of what process is due under Article II, Section 18 of the New Mexico Constitution will result in a more principled resolution of the issue than the majority's "attempt to divine what the [United States] Supreme Court 'must have meant' by its various procedural dispositions[,]" an attempt that pays "[v]ery little attention ... to deciding whether the specific facts of the [employee's situation] denied [him] due process of law." *Gray v. Department of Employment Sec.*, 681 P.2d 807, 825 (Utah 1984) (Durham, J., concurring in part and dissenting in part). I believe that such an independent analysis accords with the method of state constitutional analysis articulated in *Gomez*, 122 N.M. at 782–783, 932 P.2d at 6–7, as well as the Tenth Circuit's approach in *Benavidez*, 101 F.3d at 627, which noted that the plaintiffs in that case might have availed themselves of additional process if they had proceeded in state district court. In conducting an independent analysis under our state constitution, I would seek guidance from the decisions of federal courts and the courts of our sister states while recognizing that New Mexico courts are not bound to follow such decisions, especially when they are inconsistent with one another. *See State v. Gutierrez*, 116 N.M. 431, 435–36, 863 P.2d 1052, 1056–57 (1993).

54. New Mexico courts have long recognized that " 'due process,' ... is not a technical conception with a fixed content unrelated to time, place and circumstances.' " *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902; *see In re Valdez*, 88 N.M. 338, 341, 540 P.2d 818, 821 (1975) ("due process is a rather malleable principle which must be molded to the particular situation, considering both the rights of the parties and governmental interests involved"). For this reason, New Mexico courts have applied a balancing test to determine what process is due an individual who is deprived of a constitutionally protected interest. *See, e.g., Board of Educ. v. Harrell*, 118 N.M. 470, 478, 882 P.2d 511, 519 (1994); *State v. Rotherham*, 122 N.M. 246, 262, 923 P.2d 1131, 1147 (1996). A critical component of this balancing test is "the risk of an erroneous deprivation of [a constitutionally protected] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Rotherham*, 122 N.M. at 262, 923 P.2d at 1147 (quoting *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903).

*The Risk of Error*

55. Placing the burden of proof on Employee has a significant effect on the risk of error. "Where the burden of proof lies on a given issue is ... rarely without consequence and frequently may be dispositive to the outcome of the litigation or application." *Lavine*, 424 U.S. at 585, 96 S.Ct. at 1016; *cf. Cruzan v. Director, Mo. Dep't of Health*, 497 U.S. 261, 283, 110 S.Ct. 2841, 2854, 111 L.Ed.2d 224 (1990) (reasoning that the "more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision"); *Cooper v. Oklahoma*, 517 U.S. 348, ——, 116 S.Ct. 1373, 1383, 134 L.Ed.2d 498 (1996) ("[a] heightened standard [of proof] does not decrease the risk of error, but simply reallocates that risk between the parties"). Especially where "a post-termination hearing represents the only meaningful opportunity the employee has to challenge the employer's action, ... requiring a dismissed employee to prove in this context that he was terminated without just cause may increase the risk of an erroneous

deprivation." *Benavidez*, 101 F.3d at 626. The risk of error is increased by placing the burden of proof on the Employee for several reasons.

56. First, there is a heightened risk of error because this is a case where "issues of witness credibility and veracity ... are critical to the decisionmaking process." *Mathews*, 424 U.S. at 343–44, 96 S.Ct. at 907. In the present case, Employee's termination hinged on the credibility of witness testimony concerning whether Employee formed the intent to make false or deceptive statements on an invoice and whether Employee received money from a City contractor in exchange for tires. In this regard, Employee's case differs significantly from the drug testing cases cited by the majority, such as *Saavedra v. City of Albuquerque*, 73 F.3d 1525, 1533 (10th Cir.1996), which turned on evidence provided by objective lab tests. As noted in *Mathews*, 424 U.S. at 343–44, 96 S.Ct. at 907, the risk of error is significantly greater in cases where "issues of witness credibility and veracity ... are critical to the decisionmaking process" than in cases based upon objective "medical assessment of the worker's physical or mental condition." Indeed, where such factual controversies concerning witness credibility and veracity abound, there is more reason to afford a worker additional process even at a pretermination hearing. *See Loudermill*, 470 U.S. at 552–53, 105 S.Ct. at 1499 (Brennan, J., concurring in part and dissenting in part) (noting that due process at pre-termination hearing may require more than simple opportunity to argue or deny when there are "substantial disputes in testimonial evidence").

57. In this case, the irregularities at Employee's pre-termination hearing also increased the risk of error by turning the post-termination hearing into Employee's only meaningful opportunity to challenge the charges against him. The quality of Employee's pre-termination hearing is significant insofar as we "evaluate the constitutionality of post-termination process in light of the pre-termination procedures it follows." *Benavidez*, 101 F.3d at 626. I disagree with the majority's conclusion that the risk of error at

post-termination proceedings is sufficiently reduced by mere notice of the charges and a minimal opportunity to make an uncounseled statement at the pre-termination stage. Especially where the pre-termination proceedings are "cursory and informal," *Id.* at 626, and no sworn testimony or documentary evidence is produced at the pre-termination stage, *see Parker v. City of Fountain Valley*, 127 Cal.App.3d 99, 179 Cal.Rptr. 351, 359 (1981), I cannot conclude that the risk of error at post-termination proceedings is reduced significantly.

58. The record in this case indicates that the procedural protections afforded to Employee at his "pre-determination" hearing in April 1992 did not significantly reduce the risk of error at his post-termination hearing. The "hearing officer" involved in Employee's pre-termination proceeding was one of Employee's co-workers and was involved in the transactions on which Employee's dismissal is premised. As such, this hearing officer had contact with the primary witnesses involved in the transaction at the very time it was occurring. Such contacts may affect the pre-termination hearing officer's judgment of the witnesses' credibility and increase the risk that he will make a decision based on evidence that is not in the record. Also, Employee's counsel was not permitted to speak or ask questions on Employee's behalf at the pre-termination hearing. This inability to be represented by counsel in a meaningful way may have affected Employee's right to know opposing evidence and cross-examine adverse witnesses. Apart from the statements given by Employee and his spouse at the pre-termination hearing, the only other "evidence" before the pre-termination hearing officer consisted of hearsay reports collected by a Fire Department employee with no training in conducting investigations of employee misconduct.

59. Employee raised these concerns at his April 1994 rehearing on remand from the district court, and a different hearing officer at the April 1994 rehearing found that Employee's right to be heard in accordance with the procedures outlined in *Loudermill* was violated at the pre-termination hearing. While I would not reach the issue

of whether Employee's constitutional right to due process was violated at the pre-termination stage, I would nonetheless conclude that the pre-termination process afforded to Employee in this case cannot justify the City's allocation of proof at the July 1992 post-termination proceeding. Since this post-termination proceeding was the first evidentiary hearing at which sworn testimony and documentary evidence was produced and submitted for cross-examination before a neutral hearing officer, I would conclude that the City, not the Employee, was required to bear the burden of proof at this hearing. *See Parker,* 179 Cal.Rptr. at 359; *accord Tonkin v. Jackson County Merit Sys. Comm'n,* 599 S.W.2d 25, 32 (Mo.Ct. App.1980).

60. Another factor that increases the risk of error is the obvious disparity in resources between the public employer and an employee who no longer has a job. *Cf. Santosky v. Kramer,* 455 U.S. 745, 762–64, 102 S.Ct. 1388, 1399–1400, 71 L.Ed.2d 599 (1982). The public employer in this case was in a position to shape the historical and procedural events that formed the basis for the employee's termination. *See id.* at 763, 102 S.Ct. at 1400. We need to remember here that it is the employer that had the power and authority to terminate or otherwise discipline the employee. The employer had total control of the process used to address the alleged misconduct.

61. Finally, the risk of error is increased because the employee is burdened with proving an issue for which the employer may have better access to evidence. *Compare Department of Inst. v. Kinchen,* 886 P.2d 700, 708 (Colo.1994) (placing burden on public employer because employer is in best position to present reasons for its actions to hearing officer), *with Lavine,* 424 U.S. at 585, 96 S.Ct. at 1016 (placing burden of proving reasons for seeking public assistance on applicant because "an applicant's motive should be best known by the applicant himself"). The risk of error is further increased when the employee is given the difficult task of proving a negative. *See Kinchen,* 886 P.2d at 708; *Benavidez,* 101 F.3d at 626. In this case, Employee categorically denied the charges against him. Yet, the City required him to prove that these charges were groundless in a proceeding where the City had total control over the process and better access to the evidence which formed the basis for the dismissal.

62. I would find that the City's allocation of the burden of proof violates the Due Process Clause of the New Mexico Constitution because Employee's interests outweigh the City's interest in avoiding more process, *see Loudermill,* 470 U.S. at 544, 105 S.Ct. at 1494, and because the risk of error is reduced significantly by placing the burden of proof on the public employer.

*The Settled Tradition of Placing the Burden of Proof on the Moving Party*

63. In evaluating Employee's due process claim, I would also "seek guidance ... from the common law[,]" *Gutierrez,* 116 N.M. at 435–36, 863 P.2d at 1056–57, and "review ... the historical treatment of the burden of proof" in public employment cases to find if there is a "settled tradition." *Medina,* 505 U.S. at 446, 112 S.Ct. at 2578. New Mexico courts traditionally have required the moving party to bear the burden of proof in administrative proceedings. *See International Minerals & Chem. Corp. v. New Mexico Pub. Serv. Comm'n,* 81 N.M. 280, 283, 466 P.2d 557, 560 (1970). Our New Mexico Supreme Court recently applied this rule to require an employer to bear the burden of proving misconduct where an employee was discharged for "willful misconduct" under the State's unemployment compensation statute. *See Fitzhugh,* 122 N.M. at 184, 922 P.2d at 566; *Chicharello,* 930 P.2d at 172. I regard these cases as consistent with Judge Donnelly's special concurrence in *Boespflug,* 114 N.M. at 776, 845 P.2d at 870, as well as the long list of authorities relying on statutory, administrative, or common-law traditions of placing the burden of proof on the public employer. *See, e.g., Tonkin,* 599 S.W.2d at 31 (citing administrative procedure statute); *Parker,* 179 Cal.Rptr. at 359 (citing prior case law); *Montegue v. City of New Orleans Fire Dep't,* 675 So.2d 810, 813 (La.Ct.App.) (citing La. Const. art. X, § 8(A)), *cert. denied,* 679 So.2d 1389 (1996); *see also* 73A C.J.S. *Public Ad-*

*ministrative Law & Procedure* § 128, at 36 (1983); 67 C.J.S. *Officers & Public Employees* § 156, at 559 (1978).

64. This practice of placing the burden of proof on the public employer also can be viewed as an outgrowth of more general principles of common law. *See, e.g.,* 2 John W. Strong *et al., McCormick on Evidence* § 337, at 427 (4th ed. 1992) ("the party who has the burden of pleading a fact will have the burdens of producing evidence and of persuading the jury of its existence as well"); 1 Simon Greenleaf, *Greenleaf on Evidence* § 74, at 98 (5th ed. 1850) (quoting the old principle of Roman law: *Ei incumbit probatio, qui dicit, non qui negat* ); *Black's Law Dictionary* 516 (6th ed. 1990) (translating this principle as "[t]he proof lies upon him who affirms, not upon him who denies"); Richard Whately, *Elements of Rhetoric* ch. 3, § 2 (1846), *excerpted in The Rhetorical Tradition: Readings from Classical Times to the Present* 846–47 (Patricia Bizzell & Bruce Herzberg eds. 1990) ("no man is to be disturbed in his possessions till some claim against him shall be established. He is not to be called on to prove his right; but the claimant, to disprove it; on whom consequently the 'burden of proof' lies.").

65. This settled tradition merits constitutional protection under the New Mexico Constitution, and such protection would aid in preserving national uniformity in the area of public employment law. *See Gomez,* 122 N.M. at 783, 932 P.2d at 7 (quoting *Gutierrez,* 116 N.M. at 436, 863 P.2d at 1057).

*Conclusion*

66. In this case it is the process, rather than the result, that requires close scrutiny. Rather than limit the review of the process so that it is merely incidental to justifying the result, I would apply the balancing test enunciated in *Benavidez,* 101 F.3d at 626, recognize the settled tradition of placing the burden of proof on the moving party, and construe the Due Process Clause of the New Mexico Constitution as providing more protection than its federal counterpart. Application of these authorities to the specific facts of this case would, in my opinion, sustain a finding that Employee's right to due process was violated.

67. For the foregoing reasons, I would affirm the district court's 1993 order; the majority deciding otherwise, I respectfully dissent.