858 P.2d 1276

**Ernest GALLEGOS, Petitioner–Appellant,**

v.

**NEW MEXICO STATE CORRECTIONS DEPARTMENT and New Mexico State Personnel Board, Respondents–Appellees.**

No. 11762.

Court of Appeals of New Mexico.

Jan. 30, 1992.

E. Justin Pennington, Law Offices of E. Justin Pennington, Albuquerque, for petitioner-appellant.

Sharon Walton, Sp. Asst. Atty. Gen., Corrections Dept., Santa Fe, for respondents-appellees.

## OPINION

APODACA, Judge.

The original opinion filed January 8, 1992, is hereby withdrawn, on this court's own motion, and the following opinion is substituted in its place.

Petitioner Ernest Gallegos (Employee) appeals from orders of the district court and State Personnel Board (Board) affirming his dismissal from the New Mexico State Corrections Department (Department). Employee argues that (1) the Board's action was not supported by substantial evidence, was arbitrary and capricious, and contrary to law; (2) the Board failed to make findings supporting its conclusion that the Department had just cause to dismiss him; and (3) the Department's failure to follow its own regulations renders its decision null and void and violated Employee's right to procedural due process. We hold that the Board's decision was not supported by substantial evidence, was arbitrary and capricious, and contrary to law. Because of our disposition, we need not address the due process issue. We have combined issues 1 and 2 in our discussion. We reverse and remand, with instructions that the district court's and Board's orders be vacated and that Employee be reinstated to his former position with the Department.

### FACTS

Employee was employed by the Department as a Correctional Officer II (Lieutenant), at the Central New Mexico Correction-

al Facility (the Facility). In September 1987, when Employee was working the evening shift, he was called to assist Officer Steve Lovato (Lovato) at what was known as the J–1 unit (the unit). Lovato was having difficulty removing Inmate Dennis Leza (Leza) from a cellblock where Leza's presence was prohibited. Lt. Arthur Lesueur (Lesueur) accompanied Employee to the unit. When Employee and Lesueur arrived there, Leza and Lovato were in the corridor below the control center. The corridor was roughly horseshoe shaped, with a stairwell separating the two ends. It was impossible to see through or around the stairwell. A control center was located above the corridor on a second level. Windows in the floor of the control center allowed officers in the control center to see into the corridor below them.

Before Employee arrived at the unit, Leza had become confrontational and refused to leave the cellblock. He was holding several items of contraband, including a picture frame, which Employee took from him and handed to Lesueur. Leza suddenly grabbed for the picture frame held by Lesueur. In the brief struggle that followed, the frame broke and pieces scattered on the floor. Lovato and Employee picked up the pieces. After the frame broke, Lesueur picked Leza up with one hand on his throat and slid him up against the wall, lifting him at least several inches off the ground and holding him there for two or three seconds. Employee looked up and saw Lesueur follow Leza out the door. Officer Cary testified that Lesueur pushed Leza out the door.

Several officers saw Lesueur's action. Lovato looked up briefly as he was picking up pieces of the picture frame and saw Leza's feet off the floor. Cary and another employee, Officer Maes, saw Lesueur use force against Leza from the cellblock window. Cary testified that, if he had been momentarily distracted, he would not have seen the incident.

Employee testified that he did not see Lesueur lift Leza by the neck. He did not learn that force had been used until a month after it occurred, when Lesueur told him. After Lesueur's admission, Employee wrote a memo to the chief of security at the Facility, describing his conversation with Lesueur. The other officers involved in the incident testified either that they could not see Employee or that they were not looking at him and thus did not know where he was looking. No one testified that Employee saw Lesueur pick Leza up by the neck.

No misconduct report, incident report or use of force report describing Lesueur's lifting Leza by the neck was prepared by any officer involved. Cary prepared a report in which he related that the inmate had been in the wrong unit and had been forcibly removed from the unit by Lesueur. He submitted this report to Lesueur. For reasons that are the subject of conflicting testimony, Cary retracted his original report and filed an amended one that omitted any mention of the use of force. The control log prepared by Cary, contemporaneously with the event, did not mention the use of force.

Leza later reported the incident. In the investigation that followed, Cary, Lesueur, Lovato and Employee all denied witnessing or using force against Leza. Cary said that he had seen Lesueur push Leza out of the unit. Only Maes told the investigator that Lesueur had lifted Leza by the neck. In a second interview, Lovato admitted seeing Lesueur lift Leza by the neck. Lesueur did not admit using force on Leza until late October.

All officers involved in the incident were eventually disciplined. Cary was suspended for two days for having witnessed an incident involving the use of force and failing to report, denying witnessing such force, and providing false and misleading statements during the investigation. Lovato was suspended for two days for having provided false and misleading statements. Maes received a letter of reprimand. Lesueur was suspended for five days for using

physical force on an inmate, for failing to report the use of such force, failing to issue a misconduct report to the inmate or submit an incident report, and for making false and misleading statements during the interviews. Employee received the most severe discipline—he was terminated for failing to report the use of force, failing to issue a misconduct report to Leza or to submit an incident or use of force report, making false and misleading statements during the interview, continuing to deny witnessing the use of force, and intimidating the other officers involved by telling them that they would lose their jobs if they did not deny the use of force.

Employee sought review of his termination by the Board, which upheld his dismissal. He appealed the Board's decision to the district court, which affirmed the Board's decision. Employee then appealed to this court.

## BOARD'S DECISION WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Employee argues that there is not substantial evidence to support the charges of misconduct against him. We agree.

■ This court's scope of review in reviewing appeals under the Personnel Act, NMSA 1978, Sections 10-9-1 to -25 (Repl.Pamp.1990), is the same as that of the district court. *Padilla v. Real Estate Comm'n*, 106 N.M. 96, 739 P.2d 965 (1987); *Jimenez v. Department of Corrections*, 101 N.M. 795, 689 P.2d 1266 (1984); *Perkins v. Department of Human Servs.*, 106 N.M. 651, 654, 748 P.2d 24, 27 (Ct.App. 1987). NMSA 1978, Section 10-9-18(G) (Repl.Pamp.1990), requires the reviewing court to affirm the decision of the Personnel Board "unless the decision is found to be: (1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence; or (3) otherwise not in accordance with law." *See Anaya v. New Mexico State Personnel Bd.*, 107 N.M. 622, 625, 762 P.2d 909, 912 (Ct.App.1988).

■ The reviewing court will not reweigh the evidence or substitute its judg-

ment for that of the agency if the findings are supported by substantial evidence on the record as a whole. Whole record review requires the reviewing court to consider all of the evidence, both favorable and unfavorable to the administrative decision. *Perkins v. Department of Human Servs.*, 106 N.M. at 655, 748 P.2d at 28. An administrative action is arbitrary and capricious if, when viewed in the light of the whole record, it is unreasonable. An action is an abuse of discretion "if the agency or lower court has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." *Id.* Applying these guidelines to the facts in this appeal, we determine that there is not substantial evidence supporting the Board's decision to uphold Employee's termination.

■ The Department dismissed Employee in part because he "witnessed and failed to report" the use of force on Leza, he failed to submit a use of force report, he "made false and misleading statements regarding the use of force[,]" and he falsified his statement. The hearing officer found, and his decision was affirmed by the Board and district court, that Employee was in proximity to the incident and saw or was aware of Lesueur's use of force on Leza. He also found that Employee gave misleading information regarding the incident during the investigation. There is not substantial evidence in the record to support these findings. Although Employee acknowledged that he was in the area, neither he nor any other officer involved testified that Employee saw the incident. The only direct evidence in the record concerning what Employee saw or did not see was his own testimony—he testified that he did not see Lesueur pick Leza up by the neck. There was no evidence whatsoever that contradicted this testimony.

The lone fact that Employee was in the proximity, by itself, did not support a conclusion or inference that he saw or was

aware of the brief incident. The total confrontation with Leza lasted approximately two minutes; Lesueur's use of force against Leza lasted only two to three seconds. The evidence is undisputed that, at that time, Employee was picking up pieces of the broken picture frame off of the floor. Lovato, who was also picking up the pieces, saw the incident only because he happened to look up briefly and saw Leza's feet off of the floor. Cary, who saw the incident from the control tower, testified that, if he had been distracted, he would not have seen the incident. Employee continually maintained that he did not see nor was he aware of Lesueur's lifting Leza by the neck. Although the other officers eventually recanted their initial version and admitted they had known about the use of force, Employee never changed his story. For this reason, we are left with the inescapable conclusion that his testimony simply was not believed. Yet, the record is void of any evidence from which it could be inferred that Employee was not telling the truth. Under this posture, we cannot conclude there was substantial evidence to support a contrary finding.

Because there was not substantial evidence to support the underlying charge that Employee knew of Lesueur's use of force on the day of the incident, the other charges likewise must fail for the same reason. This would include the charges that Employee failed to report the use of force, provided false and misleading information during the investigation, and falsified his statement by continuing to deny that he saw Lesueur use force. If we assume that Employee did not see Lesueur's use of force, he obviously could not have provided false and misleading information or falsified his statement during the Department's investigation when he denied witnessing any use of force. Additionally, if Employee did not see and did not know of Lesueur's use of force, he could not know that a use of force report was necessary. Finally, if Employee did not see the incident, his steadfast claim that he did not witness the use of force was justified. Consequently, the Department's expectation that he recant was obviously unreasonable. Therefore, these particular findings by the hearing officer could not support the Department's dismissal of Employee.

■ That leaves one remaining charge against Employee that was not brought against the other officers—the Department also imposed discipline on the ground that Employee had intimidated Lesueur, Cary and Lovato to deny that the incident had occurred by telling them they would lose their jobs if they did not do so. Significantly, the hearing officer expressly found that the Department failed to prove its allegation that Employee had attempted to convince Lovato and Lesueur to support his story. On the other hand, the hearing officer did find that Employee ordered Cary to change his report. Nonetheless, the hearing officer did not find that Employee had intimidated Cary. Thus, the Department's allegation that Employee intimidated the other officers involved is not supported by the findings nor by substantial evidence and, additionally, was not a proper basis for disciplining Employee.

## BOARD'S ACTION WAS ARBITRARY AND CAPRICIOUS, AND CONTRARY TO LAW

Employee also argues that the Board's decision was arbitrary and capricious, and contrary to law, because the discipline imposed on him was so disproportionate to the discipline imposed on the other officers involved and because the hearing officer did not make appropriate findings to support the conclusion that the Department had just cause to dismiss him. On the other hand, the Department maintains that the more severe sanction is justified by Employee's intimidation of the other officers involved and his continued denial of witnessing Lesueur's use of force. To support its argument that the hearing officer properly determined there was just cause, the Department relies on the fact that the

hearing officer made a separate determination that there was just cause for Employee's dismissal. We are not persuaded that this fact alone is significant. Instead, we determine that the Department's action was arbitrary and capricious, and contrary to law, for the reasons that follow.

■ In *State ex rel. New Mexico State Highway Dep't v. Silva*, 98 N.M. 549, 552, 650 P.2d 833, 836 (Ct.App.1982), this court stated:

> Section 10-9-18(F) . . . refers to "action taken by the agency" without just cause. This statutory provision does not refer to employee conduct; it refers to *agency action* which is taken because of the employee's conduct. The Board, in deciding the appeal, must decide whether agency action was based on just cause. . . . This statute authorizes the Board to decide the propriety of the agency's action—in this case, the dismissal of Silva. (Emphasis in original.)

Thus, the Board is required to determine not only that there was employee misconduct but also that the agency's discipline was appropriate in light of that misconduct. The first prong focuses on the *employee's* action; the second prong, on the other hand, focuses on the *agency's* action.

■ Section 10-9-18(E) requires the Board to render both findings of fact and conclusions of law. The conclusion that Employee's dismissal was for just cause must be supported by the findings. *See id.* at 554, 650 P.2d at 838. An agency has acted arbitrarily and capriciously when its conduct, "viewed in light of the whole record, is unreasonable or does not have a rational basis." *Perkins v. Department of Human Servs.*, 106 N.M. at 655, 748 P.2d at 28. "An abuse of discretion is established if the agency or lower court has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." *Id.*

■ The only basis for the differential treatment, as argued by the Department in this appeal (suspension or reprimand versus termination), is Employee's continued denial that he witnessed any use of force and his alleged intimidation of the other officers. We have already determined that these findings are not supported by the evidence. Once those grounds are eliminated, it becomes clear that Employee was disciplined much more severely than any other officer involved for the *same* misconduct—failing to report the incident. The discipline imposed on the other officers ranged from a letter of reprimand to the five-day suspension imposed on Lesueur, who actually used force on Leza and repeatedly denied it. For this reason, the Department's reliance on the hearing officer's separate determination of just cause becomes meaningless. Without more in the record to support such differential treatment, we conclude that the imposition of more severe discipline on Employee was unreasonable and constituted arbitrary and capricious action.

Additionally, although the Board concluded that the Department had just cause to dismiss Employee, it made no findings to support its conclusion. This conclusion standing alone does not suffice to support a determination that the second prong mandated by *Silva* was considered. We thus conclude that the Department failed to proceed in the manner prescribed by law, which required the Department not only to determine that Employee committed the alleged misconduct but also to determine that the Department's discipline was appropriate. *See State ex rel. New Mexico State Highway Dep't v. Silva*, 98 N.M. at 552, 650 P.2d at 836. It follows that the Department's decision, in addition to being arbitrary and capricious, was also contrary to law.

**CONCLUSION**

Because the Board's action was not supported by substantial evidence, was arbitrary and capricious, and contrary to law, we reverse the district court's affirmance of the Board's action. We remand with instructions that the Department reinstate

Employee to his former position and the Board consider the appropriate award of back pay due to Employee pursuant to Section 10–9–18(F).

**IT IS SO ORDERED.**

A. JOSEPH ALARID, C.J., and BENJAMIN ANTHONY CHAVEZ, J., concur.