STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
DOCKET NO. CV-13-119

RICHARD DAVIMOS, JR.,

       Judgment Creditor

v.

ORDER

JOHN HALLE,

       Judgment Debtor

STATE OF MAINE
Cumberland ss. Clerk's Office

RECEIVED

## Introduction

This matter arises out of a New York action in which Richard Davimos, Jr. ("Davimos") obtained a judgment against John Halle ("Halle") in *Richard Davimos, Jr. v. John Halle*, Supreme Court of the State of New York, County of New York, Index No. 111013-02, June 26, 2008 (Bransten, J.), in the total sum of $1,582,657.53 on breach of contract and fraud claims. A certified copy of the New York judgment was filed in the Maine Superior Court on March 14, 2013, in accordance with the Uniform Enforcement of Foreign Judgments Act, 14 M.R.S.A. § 8001 et seq. The Cumberland County Clerk's Office sent to the parties Notice of Filing of Foreign Judgment on March 22, 2013. No opposition was filed in 30 days, and the foreign judgment was affirmed and became an established legal

1

judgment in the State of Maine. On or about May 6, 2013, Davimos sought from the Clerk's Office a Writ of Execution.

## Motion to Reopen and Vacate

On April 12, 2013, Halle filed in the Maine Superior Court a Motion to Reopen and Vacate Or, in the Alternative, to Stay Enforcement of Foreign Judgment on the grounds that at trial Davimos engaged in a pattern of false statements and perjury constituting a fraud on the court in the New York action and, on that basis, Halle is seeking to set aside the New York judgment. A foreign judgment, once filed in Maine, is subject to the same proceedings for vacating or staying enforcement as a Maine judgment. 14 M.R.S.A. §8003. M.R. Civ. P. 60(b)(3) permits motions to vacate judgments for fraud whether intrinsic or extrinsic.

Halle alleges that he discovered sometime in 2012 that he had in his possession attorney billing records of Davimos' attorney that were faxed to him in 2000 and that would corroborate his allegations of Davimos' perjury at trial.[1] Maine permits a collateral attack on the basis of fraud where the movant can demonstrate "clear and convincing proof that an advantage has been gained in the obtaining of a judgment by an act of bad faith whereby the court has been made an instrument of injustice." *Estate of Paine*, 609

---

[1] Davimos has filed a motion to strike portions of Halle's affidavit and the billing records on evidentiary grounds.

A.2d 1150, 1153 (Me. 1992); *see also Roger Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 135 (1st Cir. 2005) ("To set aside a verdict for fraud under Rule 60(b)(3), a litigant must . . . prove that any alleged fraud substantially interfered with the litigant's ability fully and fairly to prepare for, and proceed at, trial.") (internal citations omitted). Halle, however, glosses over whether he knew or *should have known* at the time of trial that these records existed and were available to him at the time of the trial. Rule 60(b) relief from judgment requires that any new evidence was not available, nor could it have been discovered by due diligence, at the time of trial. *Wooldridge v. Wooldridge*, 2008 ME 11, ¶ 8, 940 A.2d 1082.

Davimos responds that this court may not, without violating the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, vacate a New York Judgment that the New York Courts have declined to vacate. On May 15, 2013, Judge Eileen Bransten of the New York Supreme Court denied Halle's motion[2] challenging Davimos' New York Judgment. Halle has announced his decision to appeal that denial, but that the appeal period has not yet begun to run.

---

[2] Halle's New York motion was a Motion to Show Cause Why the New York Court's Judgment Entered September 18, 2008, Should Not Be Vacated and a New Trial Granted Based Upon the Plaintiff's Fraud and/or Misrepresentation.

The Full Faith and Credit Clause does not require that a foreign judgment be given "a more conclusive or final effect" than it has in the state in which the judgment originated. *New York ex rel. Halvey v. Halvey*, 330 U.S. 610, 614 (1947). The Supreme Court has not issued a definitive statement on whether fraud is a valid ground for not giving full faith and credit to a foreign judgment. *See Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 276 (1935) (noting that a foreign judgment can be ignored in only limited circumstances, including "possibly because procured by fraud."). Although the state courts are split, the majority of states appear to allow fraud as a basis for not giving full faith and credit to a foreign judgment. *See e.g. Blume Law Firm PC v. Pierce*, 741 N.W.2d 921, 927 (Minn. 2007) ("If . . . conduct [at trial] amounted to fraud, the [foreign] judgment would not be entitled to full faith and credit and the docketing of the judgment should be vacated in Minnesota."); *see also* E.H. Schopler, *Comment Note – Fraud as Defense to Action on Judgment of Sister State*, 55 A.L.R.2d 637, § 3 (1957).

For the purpose of determining whether fraud permits vacating a foreign judgment, some states distinguish intrinsic from extrinsic fraud, declining relief from judgment for intrinsic fraud, such as false testimony. *Id.* Maine does not appear to follow this distinction. *See Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 271 (1st Cir. 1996) ("Maine law . . . no

4

longer rigidly adheres to the traditional labels of extrinsic and intrinsic fraud in determining which circumstances justify overturning a prior judgment."); *but see Society of Lloyd's v. Baker*, 673 A.2d 1336, 1340-41 (Me. 1996) ("[C]ourts generally continue to permit relief only when the alleged fraud is of the type formerly denominated as 'extrinsic' fraud . . . .").

In the case at bar, not only is the alleged fraud intrinsic fraud, but also Halle had in his possession at the time of trial the documents he now says would prove the alleged falsity of Davimos's testimony. Halle's attempt to relitigate the veracity of Davimos's testimony based on evidence that was in Halle's possession at the time of trial is beyond the permissible bounds of a Rule 60(b) motion. "Discrediting witnesses does not generally justify an extraordinary second opportunity . . . . Rule 60(b) does not license a party to relitigate . . . any issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense." *George P. Reintjes Co. v. Riley Stoker Corp.*, 72 F.3d 44, 49 (1st Cir. 1995) (internal citations omitted).

The Motion to Vacate Judgment is therefore denied.

Motion to Stay Enforcement of New York Judgment

Halle also seeks to stay enforcement of the New York Judgment in this court pending final resolution of his motion for relief from judgment in

5

the New York Courts. Davimos responds that Halle has failed to articulate any grounds for staying enforcement of the New York Judgment in Maine pursuant to 14 M.R.S.A. § 8005.

14 M.R.S. § 8005(2) provides that the court "shall" stay enforcement of a foreign judgment if the judgment debtor can show "any ground upon which enforcement of a judgment [in a court] of this state would be stayed . . . ." This court has authority to issue a stay of enforcement of a judgment pending a Rule 60(b) proceeding. *See e.g. Housing Authority of City of Bangor v. Maheux*, 2000 ME 60, ¶ 3, 748 A.2d 474; *Smith v. Kenard*, 496 A.2d 660, 662 (Me. 1985). "It is within the inherent power of the Superior Court [to] temporarily stay the execution of its judgment whenever it is necessary to accomplish the ends of judgment." *Cutler Associates, Inc. v. Merrill Trust Co.*, 395 A.2d 453, 456 (Me. 1978); *see also Landis v. North American Co.*, 299 U.S. 248, 255-54 (1936).

The final disposition of the motion for relief from judgment proceeding in New York has the potential to affect the substance of the judgment against Halle. Staying enforcement of the judgment in Maine until the judgment in New York is conclusively settled is prudent to prevent the necessity of further litigation to correct the results of enforcement of a judgment later overturned. Although the court appreciates that a delay of

enforcement has the potential to negatively impact Davimos, it has been five years since he was initially awarded the judgment. This limited further delay required does not outweigh the value of ensuring that the New York proceedings are conclusively settled prior to enforcement in Maine.

The Motion to Stay Enforcement of Judgment is therefore granted until June 20, 2014 or unitl final resolution of the motion for relief from judgment in New York courts, whichever comes first.

The entry is:

1. Motion to Reopen and Vacate is DENIED; and

2. Motion to Stay Enforcement of Foreign Judgment is GRANTED, until June 20, 2014, or until final resolution of the motion for relief from judgment in New York courts, whichever comes first.

Date: July 3, 2014

_____
Joyce A. Wheeler
Justice, Maine Superior Court

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-13-119

4/18/2014

RICHARD DAVIMOS, JR.,

    Judgment Creditor

v.

JOHN HALLÉ,

    Judgment Debtor

ORDER ON MOTION
FOR ISSUANCE OF
AMENDED WRIT OF
EXECUTION

STATE OF MAINE
Cumberland ss. Clerk's Office

APR 18 2014

RECEIVED

Before the Court is judgment creditor Richard Davimos, Jr.'s motion for issuance of an amended writ of execution. Davimos argues that the Court's writ neglected to include certain post-judgment interest on his New York judgment and incorrectly applied Maine's statutory post-judgment interest rate instead of New York's statutory rate. For the following reasons the motion is granted.

## Background

On March 14, 2013, Davimos filed a copy of a certified foreign judgment against debtor John Hallé with this Court. Hallé filed a motion to vacate or stay the judgment. On July 3, 2013, the Court denied Hallé's motion to vacate but stayed enforcement of the judgment until the appeal of the New York judgment was resolved or June 20, 2014, whichever occurred first. Davimos then filed a motion to require Hallé to post a bond, which the Court granted on October 11, 2013. The Court subsequently amended its Order to require Hallé to post a $2 million bond by December 6, 2013 or the stay would be lifted. No bond was ever posted.

In January 2013, Davimos applied for a writ of execution on the judgment. The clerk's office issued a writ that included: $1 million in principal debt or

damages, $150 for costs of suit, and $582,657.53 in pre-judgment interest as stated in the New York judgment. The writ further provided for post-judgment interest at the rate of 6.16%, Maine's statutory rate, which commenced on July 3, 2013, the date the judgment was docketed.

## Discussion

### Post-judgment Interest Rate

The issue before the Court is whether the Court should apply New York's statutory post-judgment interest rate under Maine's version of the Uniform Enforcement of Foreign Judgments Act, 14 M.R.S. §§ 8001-8008 (2013).[1] Hallé argues that the Court should apply Maine's interest rate because there is a new judgment in Maine and post-judgment interest is simply a procedural enforcement tool.

Hallé is correct that when Davimos filed the New York judgment in Maine, it is treated as a new judgment in Maine. *See HLC Fin., Inc. v. Dave Gould Ford Lincoln Mercury, Inc.*, 2003 WL 22250378, at *2 (Me. Super. Ct. Sept. 24, 2003) ("[U]pon registration, the Los Angeles County Superior Court judgment will constitute a new Maine judgment . . . ."). Other jurisdictions apply the same rule. *See Drllevich Constr., Inc. v. Stock*, 858 P.2d 1277, 1281 (Okla. 1998) ("Once filed, the foreign judgment becomes a judgment of this state . . . .").

It does not follow, however, that Maine's interest rate must apply simply because there is a Maine judgment. Although there are no Maine decisions on point, other jurisdictions have squarely addressed the issue. Some jurisdictions have held that post-judgment interest provisions from the rendering state are

---

[1] The parties dispute whether Davimos could have filed under the Uniform Foreign-Money Judgments Recognition Act, 14 M.R.S. §§ 8501-8509, as opposed to the Uniform Enforcement of Foreign Judgments Act, 14 M.R.S. §§ 8001-8008.

2

entitled to full faith and credit in the forum state. *Hosp. Serv. Plan of New Jersey v. Warehouse Prod. & Sales Emp. Union*, 429 N.Y.S.2d 31, 32 (N.Y. App. Div. 1980); *Johnson v. Johnson*, 849 N.E.2d 1176, 1179 (Ind. 2006); *see also* Restatement (Second) of Conflict of Laws § 101 (1971) ("A valid judgment for the payment of money will be enforced in other states only in the amount for which it is enforceable in the state where it was rendered.") A minority of jurisdictions has concluded that post-judgment interest is a procedural question, and therefore the forum state's rate should apply unless a different interest rate is specifically included in the original judgment.[2] *Master Fin. Co. of Texas v. Pollard*, 283 P.3d 817, 827 (Kan. Ct. App. 2012); *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of North America, Inc.*, 741 A.2d 462, 470-71 & n.8 (Md. 1999) (acknowledging that Maryland follows the minority view in applying the forum state's post-judgment interest rate).

Judgment debtor is correct that the Law Court has described post-judgment interest as an "enforcement tool." *Moholland v. Empire Fire & Marine Ins. Co.*, 2000 ME 26, ¶ 7, 746 A.2d 362. That description, however, was in the context of deciding whether post-judgment interest was an element of compensatory damages for purposes of an insurance policy. *Id.* at ¶ 6. The description has limited value on this conflict of laws issue.

Applying Maine's post-judgment interest rate to the New York judgment would result in two different judgment amounts: one in New York under New York's statutory interest rate and one in Maine under Maine's rate. The general purpose behind the Uniform Enforcement of Foreign Judgments Act is "to make

---

[2] Under a third approach, post-judgment interest is applied according to the rendering state's statute until the judgment is domesticated, at which point the forum state's rate is applied. *See Silbrico Corp. v. Raanan*, 216 Cal. Rptr. 201, 205 n.1 (Cal. Ct. App. 1985) (quoting provision of California's Code of Civil Procedure).

uniform the law of those states which enact it." 14 M.R.S. § 8008. Accordingly, this Court will follow the majority of jurisdictions that apply the rendering state's post-judgment interest rate.

The entry is:

It is ORDERED that an amended writ of execution incorporating New York's statutory post-judgment interest rate shall issue.

Dated: April 18, 2014

Joyce A. Wheeler
Justice, Superior Court

PA-Lee Bals Esq
DA-Brian Champion Esq

4